[No. D065056. Fourth Dist., Div. One. June 18, 2015.]

THE PEOPLE, Plaintiff and Respondent, v.
TAHEEDAH FORREST, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 8.110, this opinion is certified for publication with the exception of parts I., II., III. and V. of the Discussion.

## COUNSEL

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Junichi P. Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NARES, J.**—This case arose in the courthouse in Chula Vista when defendant Taheedah Forrest physically attacked and threatened her sister-in-law, Patria Smith, who was testifying as a prosecution witness against Forrest's brother (Smith's husband) during his robbery trial. In the present case, a jury convicted Forrest of (1) dissuading a witness (Smith) from testifying (count 1; Pen. Code, § 136.1, subd. (a)(1); all further undesignated statutory references will be to the Penal Code unless otherwise specified) and (2) making a criminal threat (count 2; § 422). As to count 1 the jury found to be true an allegation that Forrest committed and attempted to commit that offense through the use of force and an express and implied threat of force (§ 136.1, subd. (c)(1)). The court sentenced Forrest to three years' formal probation, conditioned on her serving 365 days in jail with credit for time already served.

On appeal Forrest challenges her convictions, contending (1) the court prejudicially erred by allowing an investigator to testify for the prosecution that he had conducted a threat assessment for the district attorney's office and had determined that Smith should be placed in a witness protection program, (2) the prosecutor committed misconduct by prejudicially engaging in impermissible vouching in violation of Forrest's federal constitutional right to due process, and (3) the court prejudicially erred by failing to instruct the jury sua sponte on the lesser included offense of attempting to make a criminal threat.

Forrest also contends that three conditions of her probation (conditions 6.d., 12.f., and 12.g.) are unconstitutionally vague and/or overbroad and must be either stricken or modified.

Last, Forrest contends that both the October 28, 2013[1] minute order and the October 28 probation order must be corrected to reflect the court's oral pronouncement of sentence that she serve 365 days (not 372 days) in local custody as a condition of her probation. The Attorney General acknowledges the minute order and probation order should be corrected to conform to the oral pronouncement of judgment.

For reasons we shall explain, we modify condition 12.g. of Forrest's probation in order to avoid unconstitutional overbreadth, and we affirm the judgment as so modified. However, we remand the matter to the superior court with directions to correct the October 28 minute order and the October 28 probation order to reflect the court's oral pronouncement of sentence that she serve 365 days in local custody as a condition of her probation.

## FACTUAL BACKGROUND

On April 12 the victim in this case, Smith, testified as a prosecution witness at the San Diego County Superior Court's courthouse in Chula Vista in a criminal case in which Smith's husband, Lukmond Muhammad, and Anthony Bolden were on trial for committing a robbery. Smith was also charged in connection with the robbery because she had participated as the getaway driver. After she pleaded guilty to being an accessory after the fact, she entered into an agreement with the district attorney's office under which she would testify truthfully against her husband and Bolden, and in exchange she would be sentenced to custody for the length of time she had already served.

Forrest is Smith's sister-in-law because Smith is married to her brother. Forrest and her sister, Fatima Muhammad,[2] were in the courtroom on April 12, the day Smith testified against Lukmond.

In the present case, Smith testified for the prosecution that while she was testifying at Lukmond's trial, Forrest made noises, whispered, and twice stood up and left the courtroom in "a loud, rude[] manner." Later, after the court announced a recess during Smith's testimony, Smith and her god-mother, Veronica Hall, stepped out of the courtroom and took the elevator to

---

[1] All further dates are to calendar year 2013.

[2] As Fatima Muhammad and Lukmond Muhammad share the same last name, we shall refer to them by their first names.

the second floor to use the restroom. When they found the women's restroom was closed, they headed for the escalator. Before they reached the escalator, Forrest and her sister, Fatima, approached Smith.

Smith also testified that Forrest was angry when she approached Smith, and Forrest "got in [her] face" while "talking a lot of verbal abuse." Smith further testified that Forrest spoke to her in a "mean manner" and angrily kept yelling, "You're going to get it. You're going to get it. Do you think you are going to live? You are going to get it after court." Smith testified that Fatima was "holding [Forrest] back" while Forrest was yelling at Smith.

In similar testimony, Hall stated that Forrest "called [Smith] some names" and said to Smith, "You think you will live through this? We will get you. We will get you when you get out of here. Wait until we get out of here outside." Hall also testified that Forrest told Smith she did not understand why Smith was testifying against Forrest's brother.

Smith testified that she "asked [Forrest] what was the problem," and then Hall pulled Smith away and they (Smith and Hall) "just walked away" toward the escalators while Forrest continued to angrily yell across the room. Before Smith and Hall reached the escalators, Forrest approached Smith and hit her in the face. Smith described the blow as "a hard impact" and testified she believed Forrest had been holding an object in the hand she had used in hitting her. Smith's injuries included a swollen lip and scratches on her cheek near her nose. The force of the impact broke Smith's glasses and caused them to fall to the floor in pieces.

Hall yelled for help and a sheriff's deputy responded. Smith recounted the incident to the deputy district attorney and eventually she was taken to a jury room.

Julio Barrios, a supervising investigator for the district attorney's office, testified that when he arrived at the courthouse and met with Smith in the jury room after the incident, she appeared "shaken up" and "upset," and she had "tears on her face." Barrios also testified that Smith told him she did not want to testify.

Smith testified that, as a result of Forrest's actions outside the courtroom, she did not want to continue testifying at Lukmond's trial because she "felt as if [her] life was in danger, and [she] was scared of . . . [the] possibility of what could happen afterwards." Smith was not able to finish testifying that day.

Smith also testified she met with an investigator for the district attorney's office (Barrios) after the April 12 incident for the purpose of assessing whether she would need to relocate, and she did have to relocate.

Deputy Cesar Castillo of the San Diego County Sheriff's Department testified that on April 12 he interviewed Fatima and Forrest at the courthouse regarding the incident. He testified that Fatima told him that Forrest had argued with Smith over Smith's testifying at trial. He also testified that Fatima did not indicate Forrest had been attacked or spat upon.

Sheriff's deputies later arrested Forrest based on an outstanding felony warrant. A courthouse surveillance video recording of the April 12 incident showing Forrest hitting Smith was played for the jury and admitted into evidence.

Forrest testified in her own defense. She testified that she had learned from Smith that Smith was going to testify at her (Forrest's) brother's trial. Defense counsel asked Forrest whether, when she came to court on April 12 to attend Lukmond's trial, "it bother[ed] [her] at all [that Smith] was testifying in [her] brother's case." Forrest replied, "No."

Forrest admitted on cross-examination that she angrily slapped Smith in the face and left a scratch because "[her] nails [were] long." She testified that she slapped Smith because Smith had "talk[ed] S-H-I-T to [her]" and spat in her face.

## DISCUSSION

### I.–III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### IV. *PROBATION CONDITIONS*

Forrest next contends that conditions 6.d., 12.f., and 12.g. of her probation are unconstitutionally vague and/or overbroad and must be either stricken or modified. We uphold conditions 6.d. and 12.f., but we modify condition 12.g. in order to avoid unconstitutional overbreadth.

#### A. *Applicable Legal Principles*

A trial court has broad discretion in selecting the conditions of a defendant's probation. (*People v. Olguin* (2008) 45 Cal.4th 375, 379 [87 Cal.Rptr.3d 199, 198 P.3d 1] (*Olguin*).) Generally, a probation condition that regulates noncriminal conduct will be upheld if it is reasonably related to (1)

---

*See footnote, *ante*, page 1074.

the crime of which the defendant was convicted or (2) the goal of preventing future criminality. (*Id.* at pp. 379–380.)

█ Although challenges to the constitutionality of probation conditions on the grounds of vagueness and overbreadth are frequently made together, the concepts are distinct. "[T]he underpinning of a vagueness challenge is the due process concept of 'fair warning.' " (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 [55 Cal.Rptr.3d 716, 153 P.3d 282] (*Sheena K.*); see U.S. Const., 5th, 14th Amends.; Cal. Const., art. I, § 7.) A probation condition is unconstitutionally vague if it is not " 'sufficiently precise for the probationer to know what is required of him [or her], and for the court to determine whether the condition has been violated.' " (*Sheena K.*, at p. 890.) "A probation condition should be given 'the meaning that would appear to a reasonable, objective reader.' " (*Olguin, supra*, 45 Cal.4th at p. 382.) Also, the probation condition should be evaluated in its context, and only reasonable specificity is required. (*People v. Lopez* (1998) 66 Cal.App.4th 615, 630 [78 Cal.Rptr.2d 66] (*Lopez*).)

In contrast, a probation condition is unconstitutionally overbroad if it imposes limitations on the probationer's constitutional rights and it is not closely or narrowly tailored and reasonably related to the compelling state interest in reformation and rehabilitation. (*Sheena K., supra*, 40 Cal.4th at p. 890; *In re Victor L.* (2010) 182 Cal.App.4th 902, 910 [106 Cal.Rptr.3d 584].) "The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153 [115 Cal.Rptr.3d 869].) In an appropriate case, a probation condition that is not " 'sufficiently narrowly drawn' " may be modified and affirmed as modified. (*Lopez, supra*, 66 Cal.App.4th at p. 629; see *In re E.O., supra*, 188 Cal.App.4th at p. 1158.)

█ A defendant who did not object to a probation condition at sentencing may do so on appeal if the appellate claim "amount[s] to a 'facial challenge' " that challenges the condition on the ground its "phrasing or language . . . is unconstitutionally vague and overbroad" and the determination whether the condition is constitutionally defective "does not require scrutiny of individual facts and circumstances." (*Sheena K., supra*, 40 Cal.4th at pp. 885–886.)

On appeal we independently review constitutional challenges to a probation condition. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143 [116 Cal.Rptr.3d 84].)

B. *Analysis*

The three probation conditions that Forrest challenges—conditions 6.d., 12.f., and 12.g.—are set forth in the completed standardized probation order form ("Order Granting Formal Probation," hereafter the probation order) filed in this matter on October 28.

### 1. *Condition 12.f.: restriction on possessing weapons*

Condition 12.f. states: "Do not knowingly own, transport, sell, or possess any weapon, firearm, *replica* firearm or weapon, ammunition, or *any instrument used as a weapon*." (Italics added.)

Claiming condition 12.f. is unconstitutionally vague and overbroad and must be stricken or modified, Forrest asserts (1) the word "replica" is vague, (2) the phrase "any instrument used as a weapon" is vague, and (3) the condition is overbroad because it lacks an exception for temporary possession of a weapon in lawful self-defense. We reject her facial challenges to condition 12.f.

### a. *"Replica"*

In support of her claim that the word "replica" is unconstitutionally vague, Forrest cites two dictionary definitions, stating that "replica" is defined (1) in the Collins English Dictionary as " 'an exact copy or reproduction, especially on a smaller scale' " and (2) in the Merriam-Webster Online Dictionary as " 'an exact or very close copy of something.' " Forrest contends that, based on these definitional differences, the term "replica firearm" in condition 12.f. lacks sufficient precision to place her on notice of what conduct is prohibited.

Forrest's claim of constitutional vagueness is unavailing. The fact that one definition requires an exact copy of an item and references smaller scale reproductions, and the other makes no reference to size, does not render the word unconstitutionally vague. Taken in context, the word is reasonably specific. (See *Lopez, supra,* 66 Cal.App.4th at pp. 629–630 [a probation condition should be evaluated in its context and only reasonable specificity is required].) The purpose of condition 12.f. is to protect the public from violence or threats of violence and to prevent future criminality. To effectuate this purpose, Forrest is on fair notice she is prohibited from using or possessing actual firearms or weapons and she is also prohibited from confronting others with devices those individuals could reasonably perceive to be a weapon or firearm. The term "replica firearm or weapon" adequately conveys this prohibition. (See § 417.4 [preventing drawing or exhibiting an imitation firearm in a manner that causes a reasonable person apprehension or

fear of bodily harm]; see also § 16700 [defining an imitation firearm to include a replica of a firearm that is "so substantially similar in coloration and overall appearance . . . as to lead a reasonable person to perceive that the device is a firearm"].) No reasonable person would construe condition 12.f. as applying to a small-scale object that did not look like a real weapon.

### b. *"[A]ny instrument used as a weapon"*

Forrest next contends the use of the word "used" in the phrase "any instrument used as a weapon" renders condition 12.f. unconstitutionally vague because it is unclear whether the phrase prohibits (1) the possession of any instrument where she intends to use the instrument as a weapon or (2) the possession of any instrument which is sometimes capable of being used as a weapon. She requests that condition 12.f. be modified to state "any instrument used by the probationer as a weapon." (Italics omitted.)

We conclude there is no need to modify condition 12.f. because, again, this condition is clearly directed at prohibiting weapon possession and, when it is read in context, reasonable persons would understand that "any instrument used as a weapon" refers to an item that is being used, or is intended to be used, as a weapon, and does not refer to any object that might conceivably be used as a weapon. The phrase "used as a weapon" on its face excludes objects that are merely capable of being used as a weapon but are not actually being used as such. Also, because a violation of condition 12.f. requires Forrest to have had knowledge that the object instrument is used as a weapon, she will not be subjected to a probation violation unless she knows the instrument she possesses is intended for use as a weapon. For example, a probationer convicted of a violent crime would not be in violation of condition 12.f. by carrying a bat to baseball practice, but would be in violation of that condition if she or she possessed a baseball bat in the context being a member of a gang on the way to a gang-related confrontation.

### c. *Possession for self-defense*

Forrest also contends condition 12.f. is unconstitutionally overbroad "to the extent that it does not contain an exception for the temporary possession of a weapon in lawful self-defense." She asserts that "should [s]he find [herself] in a real emergency where [her] life is under immediate threat, [she] should not be prohibited from defending [herself] from that threat even where doing so requires the use of a weapon or an improvised weapon." Forrest maintains that condition 12.f. should be modified by appending to the end of this probation condition the phrase "except when such possession is justified because the firearm or weapon is used in accordance with the law of self-defense."

We reject Forrest's claim that condition 12.f. is unconstitutionally overbroad. When a probationer has been convicted of a violent crime, imposition of a strict condition of probation prohibiting ownership or possession of weapons is essential to promote public safety. Here, given the importance of clearly communicating to Forrest that she is prohibited from owning or possessing weapons, it is reasonable to exclude from condition 12.f. a reference to self-defense to ensure she does not believe she is permitted to knowingly own or possess a weapon in some circumstances in anticipation of the possible need for self-defense. We are satisfied that no reasonable law enforcement official or court will interpret the prohibition of weapon possession to extend to a fleeting possession of a weapon in the event, for example, that Forrest is assaulted and she temporarily seizes an object to use as a weapon in self-defense. The omission of a reference to self-defense does not render condition 12.f. constitutionally overbroad.

### 2. *Condition 6.d.: restriction on possessing weapons*

Condition 6.d., which is also set forth in the October 28 probation order, provides: "THE DEFENDANT SHALL: [¶] . . . [¶] Not knowingly possess a firearm, ammunition, or deadly weapon."

Forrest claims condition 6.d. is unconstitutional and must be stricken or modified because "[t]his condition's lack of an exception for the temporary possession of a weapon in lawful self-defense renders it unconstitutionally overbroad." The Attorney General argues that Forrest's proposed modification of condition 6.d. is "antithetical to the rehabilitative purposes and public safety concerns under [that condition]." We agree. We reject Forrest's facial challenge to condition 6.d. for the reasons we explained, *ante*, in rejecting her contention that condition 12.f. of her probation is unconstitutionally overbroad to the extent it does not contain an exception for the temporary possession of a weapon in lawful self-defense. The omission of a reference to self-defense does not render condition 6.d. constitutionally overbroad.

### 3. *Condition 12.g.: restriction on being in the presence of weapons*

Condition 12.g., as set forth in the probation order, states: "Do not remain in any building, vehicle or in the presence of any person where you know a firearm, deadly weapon, or ammunition exists."

Forrest contends this condition is unconstitutionally overbroad and should be stricken or modified because (she asserts) it prohibits her "from entering state and federal courthouses, police stations, military installations, federal and state office buildings and any other building with armed security personnel since each of these buildings contain armed individuals." She further

contends this condition improperly impinges on her constitutional rights of association and to access the courts.

██ We agree condition 12.g. must be modified in order to address Forrest's well-founded concerns. Given the widespread presence of armed security personnel in buildings and other locales, we conclude condition 12.g. is unconstitutionally overbroad because it unduly restricts Forrest's constitutionally guaranteed freedom of travel and association and her right to access the courts, and because it is not narrowly tailored to safeguard these fundamental rights while restricting her conduct in a manner reasonably designed to promote her rehabilitation and to protect public safety.

In her appellant's opening brief, Forrest argued that condition 12.g. should be modified to restrict her presence at locations where weapons are *illegally* present. Specifically, she proposed that condition 12.g. be modified to read as follows: "Do not remain in the presence of those you know illegally possess firearms, deadly weapons or ammunition."

The Attorney General responded by objecting to Forrest's proposed modification, asserting it "would allow [her] to remain in the presence of anyone who *legally* possesses deadly weapons" and, thus, it "would wholly undermine the purposes underlying the probation condition" by "allow[ing] [her], for example, to knowingly visit a stash house stocked with .22-caliber rifles or to live in a house of armed bank robbers, so long as [she] does not know that the weapons are illegal or otherwise *unlawfully* possessed." The Attorney General proposed that, in order to remedy the unconstitutional overbreadth while continuing to keep Forrest from knowingly having ready access to prohibited weapons, condition 12.g. should be modified to read as follows: "Do not remain in the presence of any person whom you know illegally possesses a firearm, deadly weapon, or ammunition. Also, do not remain in a building, vehicle or in the presence of any person when you knowingly have ready access to a firearm, deadly weapon, or ammunition, regardless of whether it was lawfully possessed or acquired."

In her reply brief Forrest does not object to the first sentence of the foregoing modification proposed by the Attorney General, which states: "Do not remain in the presence of any person whom you know illegally possesses a firearm, deadly weapon, or ammunition." She asserts this first sentence "essentially mirrors [her] suggestion."

With respect to the second sentence of the modification proposed by the Attorney General—which (as noted) states, "Also, do not remain in a building, vehicle or in the presence of any person when you knowingly have ready access to a firearm, deadly weapon, or ammunition, regardless of

whether it was lawfully possessed or acquired"—Forrest asserts she "would be happy with this second sentence if it was limited to firearms." She argues this sentence should be limited to firearms because "[a] probationer will have ready access to 'deadly weapons' and 'ammunition' any time she enters either a sporting goods store or a general store such as Walmart as these items are generally placed on store shelves and may be seen as readily accessible." Forrest proposes the following "hybrid" modification of condition 12.g.: "Do not remain in the presence of any person whom you know illegally possesses a firearm, deadly weapon, or ammunition. Also, do not remain in a building, vehicle or in the presence of any person when you knowingly have ready access to a *firearm* regardless of whether it was lawfully possessed or acquired." (Italics added.)

Forrest argues that, under her proposed modification of condition 12.g., "[she] would not be unreasonably restricted in her movements and the state's interest in preventing [her] presence in weapon store houses or [her] living with 'armed bank robbers' would be maintained."

We agree. Such a modification will remedy the unconstitutional over-breadth of probation condition 12.g. while safeguarding the state's interests in maintaining public safety, preventing future criminality, and rehabilitating Forrest by deterring her from knowingly having ready access to firearms. Accordingly, we shall order that condition 12.g. be modified to read as follows: "Do not remain in the presence of any person who you know illegally possesses a firearm, deadly weapon, or ammunition. Also, do not remain in a building, in a vehicle, or in the presence of any person when you knowingly have ready access to a firearm, regardless of whether it is lawfully possessed or was lawfully acquired."

## V. CORRECTION OF THE OCTOBER 28 MINUTE ORDER AND PROBATION ORDER*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

Probation condition 12.g. is modified to read: "Do not remain in the presence of any person who you know illegally possesses a firearm, deadly weapon, or ammunition. Also, do not remain in a building, in a vehicle, or in the presence of any person when you knowingly have ready access to a firearm, regardless of whether it is lawfully possessed or was lawfully acquired." As so modified, the judgment is affirmed.

---

*See footnote, *ante*, page 1074.

The matter is remanded to the superior court with directions to (1) correct probation condition 12.g., which is set forth in the October 28, 2013 order granting formal probation, and forward a copy of the corrected condition to the probation authorities and (2) correct both the October 28, 2013 minute order and the October 28, 2013 probation order to reflect the court's oral pronouncement of sentence that she serve 365 days in local custody as a condition of her probation and forward a copy of the corrected probation order to the probation authorities.

McConnell, P. J., and Haller, J., concurred.

A petition for a rehearing was denied July 10, 2015, and appellant's petition for review by the Supreme Court was denied September 23, 2015, S228055. Werdegar, J., did not participate therein.