Filed 6/23/16  P. v. Guevara CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G051484 |
| v. | (Super. Ct. No. 14NF1581) |
| FERNANDO ZAVALA GUEVARA, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Sheila F. Hanson, Judge.  Affirmed as modified.

Dawn S. Mortazavi, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Senior Attorney General, Barry Carlton and Karl T. Terp, Deputy Attorneys General, for Plaintiff and Respondent.

Fernando Zavala Guevara appeals from the judgment after the jury convicted him of possession of marijuana for sale and the trial court placed him on three years of formal probation with terms and conditions. Guevara argues three probation terms are unconstitutional. For reasons we will explain, we conclude many of Guevara's contentions have merit. Therefore, we will modify various terms of Guevara's probation and affirm the judgment as so modified.

FACTS

Late one evening, Officer Mark Lillemoen was dispatched to a gas station in Anaheim to look for a brown Toyota Corolla. When Lillemoen arrived, he saw Guevara seated in the driver's seat of a brown Toyota Corolla and a second person seated in the passenger's seat. When Lillemoen asked Guevara what he was doing, Guevara said he and his friend were on their way to work when it was canceled, so they stopped at the gas station. Lillemoen asked Guevara if the car belonged to him, and Guevara said it did.

During a search of the car, Lillemoen found a BB gun underneath the driver's seat and a small digital scale sitting on the center console. In the trunk, Lillemoen found a black backpack containing two hard-packed marijuana balls wrapped in plastic and a blue duffel bag containing an air tank and bolt cutters. Lillemoen initially believed the air tank was a nitrous oxide tank, but after looking at the label on the tank, determined it to be a carbon dioxide tank. Guevara admitted the air tank was his, but denied the marijuana and bolt cutters belonged to him. Guevara admitted the BB gun was his and explained it was in his car because he planned to sell it.

An information charged Guevara with possession of marijuana for sale (Health & Saf. Code, § 11359) (count1), and sale or transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)) (count2). At trial, Lillemoen testified possession of marijuana for sale is usually indicated by the following: (1) a large amount of marijuana; (2) a large amount of money; (3) pay-owe sheets; (4) a scale to measure the marijuana;

2

and (5) weapons for the dealer's protection. Lillemoen stated he searched Guevara's cell phone for text messages about marijuana sales but he found none. Lillemoen said he searched Guevara and found $7.28. He found no pay-owe sheets or packaging materials that could be used to re-package the marijuana into smaller amounts. Despite the lack of these objects, Lillemeon opined the marijuana was possessed for sale.

Officer Catalin Panov was a vice unit officer and had previously been a street narcotics investigator. Over a 14-year period, Panov had participated in "1,000 investigations and arrested more than 500 individuals for violations involving cocaine, methamphetamine, marijuana, and heroin." In Panov's opinion, the substance found in Guevara's car was marijuana. Panov opined that if the marijuana was low to mid-grade marijuana, it would have a street value of $800 to $1,400; however, if it were high-grade marijuana it would have a value of $3,200 to $3,500.[1]

A jury found Guevara guilty of count 1. Guevara waived his right to have a probation and sentencing report prepared and requested immediate sentencing. The trial court suspended imposition of sentence and placed Guevara on three years of formal probation on condition he serve 180 days in jail with credit for 180 days served, pay various fines and fees, register pursuant to Health and Safety Code section 11590, and provide a DNA sample and fingerprints to the state DNA database. The trial court also imposed numerous other terms and conditions of probation.

As relevant here, the trial court imposed the following three conditions: "You will be ordered to cooperate with your probation officer in any plan for psychological, psychiatric, alcohol or drug treatment, any type of treatment they think you are deserving of or need. [¶] You'll be ordered not to associate with persons known to you to be parolees on postrelease community supervision, convicted felons or users or

---

[1]    After the prosecution rested, the trial court granted Guevara's motion to dismiss count 2 pursuant to Penal Code section 1118.1.

sellers of illegal drugs or anyone otherwise who your probation officers tells you you can't associate with. [¶] You are to not own, use, or possess any type of dangerous or deadly weapon, including any firearm or ammunition."

DISCUSSION

Guevara argues two probation terms imposed by the court violate the separation of powers doctrine and a third is overbroad. Below we will address each in turn.

Probation terms may limit constitutional rights if those limitations are reasonably necessary to meet the goals of probation. (*People v. Bauer* (1989) 211 Cal.App.3d 937, 940-941.) Judicial discretion to set terms of probation is circumscribed by constitutional considerations. (*People v. Hackler* (1993) 13 Cal.App.4th 1049, 1058.) Where a term impinges on a constitutional right, it must be carefully tailored and reasonably related to the compelling state interest in reformation and rehabilitation. (*People v. Quiroz* (2011) 199 Cal.App.4th 1123, 1128.) Any probation term challenged on its face as unconstitutional is reviewed de novo. (*In re Shaun R.* (2010) 188 Cal.App.4th 1129, 1143.) Facial challenges to the constitutionality of probation conditions may be raised on appeal without prior objection in the trial court. (*In re Sheena K.* (2007) 40 Cal.4th 875, 883, 887-889 (*Sheena K.*).)

A term of "probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality.'" (*People v. Lent* (1975) 15 Cal.3d 481, 486.) A "court may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation. However, the court's order cannot be entirely open-ended." (*People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1358-1359 (*O'Neil*).)

4

*Prohibited Associates*

Conceding his First Amendment right of association may be restricted if the probation term is narrowly drawn, Guevara, citing to *O'Neil, supra,* 165 Cal.App.4th 1351, argues the probation term prohibiting him from associating with anyone he knows his probation officer disapproves of is impermissible because it delegates unlimited power to infringe on his freedom of association.

The Attorney General, in an attempt to distinguish *O'Neil, supra,* 165 Cal.App.4th 1351, contends Guevara's argument only has merit if the phrase prohibiting association "with anyone he knows is disapproved by his probation officer" is considered out of context with the rest of the terms.

The *O'Neil* case involved a probation term to "'not associate socially, nor be present at any time, at any place, public or private, with any person, as designated by your probation officer.'" (*O'Neil*, *supra*, 165 Cal.App.4th at p. 1354.) The *O'Neil* court determined the probation term was unconstitutionally overbroad in two respects. (*Id.* at p. 1357.) The first problem the court found was that the restriction on association was not expressly limited to those persons whom defendant knew his probation officer had designated. The second problem, "a larger problem," was "there are no limits on those persons whom the probation officer may prohibit defendant from associating with." (*Ibid.*)

Here, the trial court prohibited Guevara from associating with anyone known to be disapproved of by the probation officer. We conclude the knowledge requirement was met here. Turning to the second problem identified in *O'Neil*, the Attorney General asserts the probation term is not open-ended like the term in *O'Neil* because the class of persons the court ordered Guevara not to associate with was defined by the enumerated classes of people indicated initially, i.e., parolees on post release community supervision, convicted felons, illegal drug users, and illegal drug sellers. We disagree.

5

As ordered, there are no limits on those persons whom the probation officer may prohibit Guevara from associating with. The Attorney General suggests that should we find this term to be overbroad, this court should modify it to order Guevara "'not to associate with persons known to you to be parolees on post release community supervision, convicted felons, illegal drug users, illegal drug sellers or anyone whom your probation officer identifies as associating with such people.'" We accept the Attorney General's suggestion and modify the term accordingly. (*Sheena K., supra,* 40 Cal.4th at p. 892 [appellate courts power to modify probation term on appeal].) Such a modification adequately limits and defines the class of people with whom Guevara may not associate and those persons who may provide a conduit to people with which Guevara may not associate.

*Treatment Plan*

Guevara contends the probation term that requires him to cooperate with his probation officer in any type of treatment the probation officer thinks appropriate is an improper delegation of judicial power. Guevara contends this term gives the probation officer unlimited authority to order him to undergo any treatment he or she determines appropriate, including indefinite treatment, residential treatment, and sex offender, domestic violence, and psychiatric treatment. Guevara requests we modify the term to limit any treatment to outpatient drug treatment.

The Attorney General asserts the trial court could permissibly impose as a term of probation that Guevara participate in and complete any appropriate drug treatment program. She argues Penal Code section 1210.1 does not mandate the court make the actual selection from the available treatment options for a probationer. We agree with respect to a program for *drug* treatment. However, the term is overbroad because it is not limited to treatment programs that are related to the crime for which Guevara was convicted. As ordered, the term does not adequately limit the type of treatment the probation officer can direct. The term must be modified to read as follows:

6

"You will be ordered to cooperate with your probation officer in any plan for psychological, psychiatric, alcohol, or drug treatment."

*Weapons Restriction*

Guevara asserts the probation term regarding weapons lacks a knowledge requirement and fails to allow for lawful use of weapons to defend himself. As to the knowledge requirement, Guevara and the Attorney General agree there is a discrepancy between what the court said from the bench and the court order. Although the court did not articulate a knowledge requirement, the court order includes such a requirement. Guevara objects to the oral pronouncement as impermissible and we agree. Where there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186.) Thus, the order cannot cure the defect in the oral pronouncement. The Attorney General suggests no clarification is necessary. To resolve the conflict we will order the term modified to include the knowledge requirement.

Finally, Guevara asserts that because the weapon probation term fails to exclude the use or possession of a weapon for lawful means, it is unconstitutional and must be stricken. He requests we modify the term to exclude the lawful use of a dangerous or deadly weapon. Relying on *People v. Forrest* (2015) 237 Cal.App.4th 1074, the Attorney General urges we reject Guevara's claim. Unlike the defendant in *Forrest*, Guevara was not convicted of a violent crime. (*Id*. at pp. 1076, 1083.) However, *Forrest* is still instructive. The *Forrest* court concluded the omission of a reference to self-defense did not render the condition constitutionally overbroad because no law enforcement officer would consider defendant's fleeting use of a weapon in self-defense as a probation violation. (*Id*. at p. 1083.)

Here, if Guevara possessed or used a dangerous or deadly weapon in self-defense, he could establish his possession or use was not willful, i.e., the mens rea, at the probation violation hearing. "A court may not revoke probation unless the evidence

7

supports 'a conclusion [that] the probationer's conduct constituted a willful violation of the terms and conditions of probation.' [Citation.]" (*People v. Cervantes* (2009) 175 Cal.App.4th 291, 295.) Accordingly, we find no reason to modify this condition to specifically exclude the possession or use of a weapon in a self-defense circumstance.

## DISPOSITION

The trial court is ordered to modify the association term of probation to read as follows:

"You are not to associate with persons known to you to be parolees on post release community supervision, convicted felons, illegal drug users, illegal drug sellers or anyone whom your probation officer identifies as associating with such people."

"You will be ordered to cooperate with your probation officer in any plan for psychological, psychiatric, alcohol, or drug treatment."

"You are to not knowingly own, use, or possess any type of dangerous or deadly weapon, including any firearm or ammunition."

As so modified, the judgment is affirmed.


O'LEARY, P. J.

WE CONCUR:


ARONSON, J.


FYBEL, J.


8