Filed 8/30/22 In re J.O. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re J.O., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>                v.<br><br>J.O.,<br><br>        Defendant and Appellant. | F083798<br><br>(Super. Ct. No. JV8269)<br><br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Tuolumne County. Frank Dougherty, Judge. (Retired Judge of the Merced Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)

Linda K. Harvie, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Michael A. Canzoneri and George M. Hendrickson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Hill, P. J., Franson, J. and Smith, J.

Minor J.O. admitted molesting two of his younger sisters. He appeals the juvenile court's disposition, contending (1) three probation conditions regarding his electronic devices are unreasonable and unconstitutionally overbroad, and (2) two probation conditions regarding intoxicating substances, paraphernalia, and chemical testing are unconstitutionally vague. We strike the conditions and remand for the juvenile court to consider modifying and reimposing them. In all other respects, we affirm.

## BACKGROUND

Minor lived with his father, stepmother, and their blended family. For several years, while minor was about 10 to 15 years old, he sexually molested his stepsister (V1) and his biological sister (V2). Minor was about two years older than V1 and about five years older than V2. When minor was about 10 years old, he began molesting V1 when she was about eight. The molestation occurred in their bedrooms or in their "club house." V1 eventually told her older brother about the molestation in front of minor. She thought her older brother did not believe her, but it probably scared minor and he stopped molesting her. However, minor then began molesting his biological sister, V2, when she was about nine years old and he was about 14 years old. The molestation occurred in their bedrooms. There was a third, younger sister in the home that minor had apparently not molested.

Father and stepmother were unaware of the sexual abuse, but for a few years, stepmother had noticed that V1 (her daughter) was behaving differently and acting disrespectfully toward father and stepmother. They got V1 involved in therapy and believed it was helping her. But eventually, on September 15, 2021, V1 and stepmother had a " 'blowup argument' " and V1 revealed minor's sexual abuse. After speaking with the children, father and stepmother contacted child welfare services and reported the suspected abuse on September 16, 2021.

The next day, officers and a social worker responded to the home, arrested 15-year-old minor, and interviewed V1, V2, father, and stepmother.

2.

V1 told the social worker, " 'Um, he kind of made me lie down so he could touch me." She added, " 'I am pretty sure it was intentional; he knew what he was doing.' " She could not recall the exact time frame, but said, " 'I don't remember when it was. I just remembered he was touching me a lot.' " She said, " '[Minor] would touch my, uh, frontal private part.' " When asked whether the touching was over or under her clothes, V1 answered, " 'Under, but he made me get naked a lot.' " The social worker asked her if anything else happened other than the touching under her clothing. She replied, " 'He, he licked me down there a couple of times. And that was—he did go as far to like, yeah, try and penetrate me. He tried one time, but I was uncomfortable, and I—just told him to stop.' " She said she did not feel safe around him.

Minor quit touching V1 when she told her older brother about the touching while minor was in the room. She thought her older brother did not believe her, but she thought minor became scared and stopped touching her. She told the social worker, " 'And then, uh, sadly he moved on to [V2].' " The social worker asked her how she knew that, and she answered, " '[V2] said he tried to stick his penis in her. He didn't actually—he tried, but you know he failed miserably.' " She added, " 'Yeah, she told me that he started to touch her a lot and stick his finger in her vagina.' "

V2 also understood why the social worker was there. She said, " 'Yeah, to talk about the thing [minor] did.' " She added, " 'So technically, this was a year ago, right when I turned ten, now I am eleven.[] He started to try and touch me down there, and I felt really uncomfortable with it. I kept trying to tell him to stop, but he wouldnt. And then he eventually tried to have sex with me, and I told him not to do that. And he put me on [the older brother's] bed and told me to pull down his pants, and I didn't want to do that. And after that I just couldn't stop thinking about what he tried to do.' " When the social worker asked her about any other abuse, she replied, " 'He would just grab his thing and he would try to stick in my area, and I would keep telling him to stop, and he just wouldn't stop doing that.' " When asked where minor would touch her, she said,

3.

" 'My vagina and my butt mostly.' "  She would only be wearing a bra and shirt but would have no pants or underwear on.  He would pull her pants down to her ankles.  She said minor's penis would touch her.  He would try to put it inside her vagina and bottom.  She said, " 'I just usually sat in my room for a while to think about it, and usually once I told him to stop, he would like stop for a week or two, and then he'd continue doing it again.' "

When the social worker asked V2 how many times it had happened, she said, " 'Probably a lot.  I can't even count.' "  She thought the last incident occurred about five months earlier.  The social worker asked her if she knew why minor stopped.  She said, " 'I don't know cause I feel he just didn't want to get caught anymore.  Cause he probably felt that it was kinda uncomfortable being there with me.' "  She said she did not think minor had been sexually abusing her younger sister.

When interviewed, father stated that he and stepmother were " 'baffle[d]' " by minor's abuse of the girls.  Father said, " 'He's almost sixteen years old, um, never, never would I have thought given his character, given his, … the amount of responsibility that he takes on and the things that he does for us and with us, you know, there was never, never any obvious indication that, you know, there was stuff like that going on.' "  They "never suspected any of this."

On September 21, 2021, the Tuolumne County District Attorney filed a petition pursuant to Welfare and Institutions Code section 602, alleging that minor committed five counts of sexual offenses upon a child.

On November 8, 2021, minor admitted the allegations in counts 1 and 5—that he committed continuous sexual abuse of a child under the age of 14 years (Pen. Code, § 288.5, subd. (a); count 1) and a lewd act upon a child under the age of 14 years (Pen. Code, § 288, subd. (a); count 5).  The prosecutor dismissed the three remaining counts.

At the dispositional hearing on December 6, 2021, the juvenile court adjudged minor a ward of the court and placed him on probation.  The court placed minor in

4.

juvenile hall for 281 days (including days served) where he would receive treatment for sex offenders. Thereafter, minor would return to father's custody and live with his stepgrandparents.

On January 20, 2022, minor filed a notice of appeal.

**DISCUSSION**

**I.     Probation Conditions 25, 26, and 27**

Minor contends probation conditions 25, 26, and 27, which relate to electronics searches and data, are unreasonable under *People v. Lent* (1975) 15 Cal.3d 481 (*Lent*) and *In re Ricardo P.* (2019) 7 Cal.5th 1113 (*Ricardo P.*). Minor also contends the conditions are unconstitutionally overbroad. We conclude the search condition (condition 26) must be modified to survive *Lent* and *Ricardo P.* Because we strike the search condition, conditions 25 and 27 will serve no purpose unless the search condition is reimposed, and thus we strike them as well. Consequently, we need not reach the constitutional issue.

*A.     Conditions*

Condition 25 states: "The minor shall not intentionally conceal the source, destination or content of any electronic communication transmitted or otherwise sent by the minor and the minor shall not intentionally destroy, alter or wipe any data contained on any electronic device, including but not limited to by means of setting the device to default factory settings, except as allowed by the Court."

Condition 26, the electronics search condition, states: "The minor shall disclose and make available to the Probation Officer all electronic mail accounts, all internet accounts, and any other means of access to any computer or computer network and all passwords and access codes. The minor shall consent to search of all electronic mail and internet accounts at any time and to seizure of any information or data contained therein without a search warrant or probable cause."

Condition 27 states: "The minor shall not possess software or any electronic device designed to encrypt data or electronic communications, or record images depicting

5.

pornography, child erotica, or erotica of any kind, except as allowed by the Court after providing notice to the Probation Officer and allowed for a hearing on this matter."

### B. Law

A juvenile court may impose on a minor on probation "any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (Welf. & Inst. Code, § 730, subd. (b).) "A juvenile court enjoys broad discretion to fashion conditions of probation for the purpose of rehabilitation and may even impose a condition of probation that would be unconstitutional or otherwise improper so long as it is tailored to specifically meet the needs of the juvenile." (*In re Josh W.* (1997) 55 Cal.App.4th 1, 5; *In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K.*).) The power of the juvenile court is even broader than that of the criminal court because of the juvenile court's rehabilitative function, and " '[a] condition of probation which is impermissible for an adult criminal defendant is not necessarily unreasonable for a juvenile receiving guidance and supervision from the juvenile court.' " (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1118.) Thus, a juvenile court "must consider whether, in light of 'the facts and circumstances in each case' [citation], the burdens imposed by the [search] condition are proportional to achieving some legitimate end of probation." (*Id.* at p. 1127.) "[E]very juvenile probation condition must be made to fit the circumstances and the minor." (*In re Binh L.* (1992) 5 Cal.App.4th 194, 203.)

"On appeal, we ' "review conditions of probation for abuse of discretion." ' [Citation.] Specifically, we review a probation condition 'for an indication that the condition is "arbitrary or capricious" or otherwise exceeds the bounds of reason under the circumstances.' " (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1118.) But where the constitutionality of a probation condition is challenged, we review the condition de novo. (*In re Malik J.* (2015) 240 Cal.App.4th 896, 901.)

6.

In *Lent*, the Supreme Court articulated the following test to determine whether a probation condition constitutes an abuse of discretion: "A condition of probation will not be held invalid unless it '(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality ....' " (*Lent*, *supra*, 15 Cal.3d. at p. 486.) "This test is conjunctive—all three prongs must be satisfied before a reviewing court will invalidate a probation term." (*People v. Olguin* (2008) 45 Cal.4th 375, 379.) "As such, even if a condition of probation has no relationship to the crime of which a defendant was convicted and involves conduct that is not itself criminal, the condition is valid as long as the condition is reasonably related to preventing future criminality." (*Id*. at pp. 379–380.) The *Lent* test applies to juvenile as well as adult probation conditions. (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1119.)

In *Ricardo P.*, the Supreme Court addressed whether an electronics search condition requiring a minor to submit electronics, including passwords, to search by a probation officer satisfied the third prong of the *Lent* test (the condition had already satisfied the first and second prongs), and thus was invalid. (*Ricardo P.*, *supra*, 7 Cal.5th at pp. 1116–1117, 1119.) The minor admitted two counts of felony burglary. (*Id*. at p. 1115.) There was no indication the minor used an electronic device in connection with the burglaries. However, the probation report indicated that he was using drugs at the time he committed the offense, and the juvenile court believed that "teenagers 'typically' brag about … drug use on social media." (*Id*. at p. 1119.) The juvenile court imposed probation conditions prohibiting the minor from using or possessing illegal drugs, as well as an electronics search condition "to enable probation officers to monitor whether [the minor was] communicating about drugs or with people associated with drugs." (*Ibid*.)

The Supreme Court concluded that, even assuming the minor was using drugs at the time he committed the burglaries and teenagers tend to brag about drug use online, the electronics search condition satisfied *Lent*'s third prong, and thus was invalid,

7.

because "the burden it impose[d] on [the minor's] privacy [was] *substantially disproportionate* to the condition's goal of monitoring and deterring drug use." (*Ricardo P.*, *supra*, 7 Cal.5th at pp. 1119–1120, italics added.)

First, the court explained that there must be a "closer relationship" between the probation condition and deterring future criminality—"more than just an abstract or hypothetical relationship." (*Ricardo P.*, *supra*, 7 Cal.5th at pp. 1120–1121.) " 'Not every probation condition bearing a remote, attenuated, tangential, or diaphanous connection to future criminal conduct can be considered reasonable' under *Lent*." (*Id.* at p. 1127.) The court explained that the record, which contained "no indication that [the minor] had used or [would] use electronic devices in connection with drugs or any illegal activity, [was] insufficient to justify the substantial burdens imposed by [the] electronics search condition." (*Id.* at p. 1116.) The court stated that "requiring a probationer to surrender electronic devices and passwords to search at any time is … burdensome and intrusive, and requires a correspondingly substantial and particularized justification." (*Id.* at p. 1126.)

The court stressed, however, that *Lent* does not require an actual "nexus" between the probation condition and the underlying offense or a prior offense. (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1122.) " '[C]onditions of probation aimed at rehabilitating the offender need not be so strictly tied to the offender's precise crime' [citation] so long as they are 'reasonably directed at curbing [the offender's] future criminality' [citation]. For example, courts may properly base probation conditions upon information in a probation report that raises concerns about future criminality unrelated to a prior offense." (*Ibid.*)

Second, the court explained that "*Lent*'s requirement that a probation condition must be ' "reasonably related to future criminality" ' contemplates a degree of proportionality between the burden imposed by a probation condition and the legitimate interests served by the condition." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1122.) "A probation condition that imposes substantially greater burdens on the probationer than the

circumstances warrant is not a 'reasonable' one." (*Id*. at p. 1128.) Regarding this proportionality requirement, the court explained that a "probationer's offense or personal history may provide the juvenile court with a sufficient factual basis from which it can determine that an electronics search condition is a proportional means of deterring the probationer from future criminality." (*Id*. at pp. 1128–1129.)

The court determined that this proportionality was lacking in the case before it. The court explained: "[N]othing in the record suggests that [the minor] has ever used an electronic device or social media in connection with criminal conduct. The juvenile court instead relied primarily on indications that [the minor] had previously used marijuana and its generalization that 'minors typically will brag about their marijuana usage or drug usage, particularly their marijuana usage, by posting on the Internet, showing pictures of themselves with paraphernalia, or smoking marijuana.' Based solely on these observations, the juvenile court imposed a sweeping probation condition requiring [the minor] to submit all of his electronic devices and passwords to search at any time. Such a condition significantly burdens privacy interests." (*Ricardo P*., *supra*, 7 Cal.5th at pp. 1122–1123.) The court stated: "[T]he electronics search condition here is expansive in its scope: It allows probation officers to remotely access [the minor's] e-mail, text and voicemail messages, photos, and online accounts, including social media like Facebook and Twitter, at any time. It would potentially even allow officers to monitor [the minor's] text, phone, or video communications in real time. Further, the condition lacks any temporal limitations, permitting officers to access digital information that long predated the imposition of [the minor's] probation." (*Id*. at p. 1127.)

The court noted: "If we were to find this record sufficient to sustain the probation condition at issue, it is difficult to conceive of any case in which a comparable condition could not be imposed …. Indeed, whatever crime a juvenile might have committed, it could be said that juveniles may use electronic devices and social media to mention or brag about their illicit activities. [¶] The plain language of this electronics search

9.

condition would require [the minor] to provide probation officers full access, day or night, not only to his social media accounts but also to the contents of his e-mails, text messages, and search histories, all photographs and videos stored on his devices, as well as any other data accessible using electronic devices, which could include anything from banking information to private health or financial information to dating profiles. [Citation.] If the juvenile court's observation that 'minors typically will brag about their marijuana usage or drug usage' online were sufficient to justify the substantial burdens the condition imposes, it is hard to see what would be left of *Lent*'s third prong." (*Ricardo P.*, *supra*, 7 Cal.5th at pp. 1123–1124.)

*Ricardo P.* affirmed the Court of Appeal's striking of the electronics search condition and remanded so the juvenile court could conduct further proceedings consistent with the opinion. (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1129.)

Since *Ricardo P.*, appellate courts have stricken many broad electronics search conditions and remanded to the juvenile courts for tailoring of more narrow search conditions and reimposition of those conditions in the courts' discretion. For example, in *In re Alonzo M.* (2019) 40 Cal.App.5th 156 (*Alonzo M.*), the minor committed grand theft of a person and misdemeanor burglary. (*Id.* at pp. 159–160.) "The juvenile court imposed various conditions of probation, including that Alonzo stay away from his coresponsibles and from other people of whom his parents or the probation officer disapproved, and an electronic search condition for the purpose of addressing Alonzo's admitted susceptibility to negative social influences. [Citation.] The actual terms of the search condition, however, reached beyond the stated purpose and, though not as broad as the condition in *Ricardo P.*, authorized the search of any medium of communication reasonably likely to reveal whether the minor was complying with any of the terms of his probation, not limited to terms related to Alonzo's susceptibility. [Citations.] Even though the record in *Alonzo M.* showed that [the] minor spent a significant amount of time using electronic devices, and the Court of Appeal concluded that an electronic

10.

search condition would be permissible as reasonably related to [the] minor's future criminality, [the Court of Appeal] concluded that the challenged condition was invalid because it 'burden[ed] Alonzo's privacy in a manner substantially disproportionate to the probation department's legitimate interest in monitoring Alonzo's compliance with the stay-away orders.' [Citation.] The Court of Appeal struck the condition and remanded the case to the juvenile court 'so the court [could] consider whether to adopt an electronic search condition consistent with [that] opinion.' " (*In re Amber K.* (2020) 45 Cal.App.5th 559, 566–567 (*Amber K.*), citing *Alonzo M.*, *supra*, 40 Cal.App.5th at pp. 166–168.)

Similarly, in *Amber K.*, the minor assaulted a schoolmate and then posted profanity-laced comments about the assault and photographs of herself flipping off the camera on social media. (*Amber K.*, *supra*, 45 Cal.App.5th at pp. 562–563.) The juvenile court imposed an electronics search condition, which required the minor to " 'submit her cellphone or any other electronic device under her control to a search of any medium of communication reasonably likely to reveal whether she is complying with the terms of her probation, with or without a warrant at any time of the day or night.' " (*Id.* at p. 564.) The appellate court found no abuse of discretion in imposing a search condition with the purpose of monitoring the minor's compliance with the juvenile court's order to stay away from her victim. (*Id.* at p. 567.) But the court concluded that the condition, as written, went too far by broadly permitting electronics searches for the purpose of ensuring the minor's compliance with all probation conditions, not just the no-contact condition. (*Ibid.*) The court concluded the search condition was impermissible under *Lent* and *Ricardo P.*, and therefore struck it and remanded the matter for the juvenile court to consider whether to impose a modified condition. (*Amber K.*, at pp. 567–568.)

In both *Alonzo M.* and *Amber K.*, the appellate courts concluded imposition of an electronics search condition for the purpose of ensuring that the minor stay away from negative social influences was appropriate, but the conditions, as written, were too broad

11.

to survive scrutiny under *Lent* and *Ricardo P.* because they authorized searches likely to reveal whether the minor was complying with the terms of his or her probation *generally*, rather than just the no-contact condition specifically. (*Alonzo M.*, *supra*, 40 Cal.App.5th at pp. 166–168; *Amber K.*, *supra*, 45 Cal.App.5th at p. 567.) As a result, the search conditions failed to meet *Ricardo P.*'s requirement that they be more narrowly tailored to the state's legitimate interest in probation supervision. (*Alonzo M.*, at pp. 167–168; *Amber K.*, at p. 567.)

To summarize, under *Ricardo P.*, electronics search conditions can survive *Lent* if they are reasonably aimed at curbing the minor's future criminality and do not impose a substantially greater burden on the minor than the circumstances warrant. (*Ricardo P.*, *supra*, 7 Cal.5th at pp. 1122, 1128–1129.) The warranting circumstances of a case have been described as "[a] case-specific rationale." (*People v. Cota* (2020) 45 Cal.App.5th 786, 791.) "Mere convenience in monitoring a [probationer's] conduct, coupled with generic descriptions of how some people use [electronics], are not sufficient to render this burden on [the probationer's] privacy interests reasonable." (*Ibid.*) In cases where the burden imposed on the minor's privacy interests exceed that which is proportional to the legitimate interests served by the search condition, the appellate court may strike the condition and remand for the juvenile court to modify and reimpose it, if the court so chooses.

### C.    Analysis

In this case, defense counsel objected to the three electronics conditions under both *Lent*'s third prong and the Constitution. The prosecutor responded that people who commit sexual offenses often turn to electronic means to satisfy their desires, and oversight of minor's electronic devices would give probation the ability to tailor his treatment. The probation officer argued that probation could ensure that minor was not attempting to contact V1 or V2 or view pornography. The juvenile court found the electronics conditions appropriate.

12.

We agree with minor that the electronics search condition (condition 26) satisfies *Lent*'s first and second prongs—the condition has no relationship to the crimes committed, and the use of electronic devices is not in itself criminal conduct. (*Lent*, *supra*, 15 Cal.3d. at p. 486.) Furthermore, we agree that the condition, as written, also satisfies *Lent*'s third prong because it imposes a burden on minor disproportionate to the legitimate interests it serves. (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1122.) Thus, the condition is unreasonable under *Lent* and we must strike it. Modification of the condition, however, can achieve proportionality. We will explain in further detail.

First, we believe a tailored electronics search condition is justified in this case, which we think is distinguishable from *Ricardo P.*, in that the circumstances here present a "closer relationship between the probation condition on one hand and [minor's] criminal conduct and deterring future criminality on the other." (*Ricardo P.*, *supra*, 7 Cal.5th at p. 1120.) Although the electronics search condition here is not " 'strictly tied to [minor's] precise crime,' " the condition is " 'reasonably directed at curbing [minor's] future criminality.' " (*Id.* at p. 1122.) For several years, minor committed sexual crimes against V1 and V2 in complete privacy and secrecy, moving from one victim to the other when he felt he was risking discovery. During those years, his abuse went entirely undetected and unreported. His victims said nothing and their parents knew nothing. Under these circumstances, the juvenile court was justified in its concern that minor would continue to secretly pursue criminal sexual behavior, either against V1 and V2 or against new victims—and would again do so entirely undetected unless probation had the ability to supervise his activity. Because he would no longer be in the home with V1 and V2, any secret contact with them would likely require him to contact them electronically. For this reason, the court imposed a probation condition that prohibited any contact with V1 and V2, including electronic. The court was also justified in its concern that minor would access pornography electronically, especially in the absence of ready access to his

13.

victims. Thus, the court imposed a probation condition that prohibited possession of any pornography, including electronic.

These conditions required supervision and enforcement, and the court reasonably concluded the electronics search condition would allow probation to monitor whether contact with victims and access to pornography were occurring, and to act if they were, thereby deterring future crimes. Additionally, the condition itself would likely deter minor from engaging in these activities in the first place. The juvenile court correctly recognized—and attempted to address with probation conditions—the risk to both minor and his victims if minor were not adequately supervised and his potential new crimes went undetected. Under the facts of this case, the court correctly concluded a search condition was reasonably necessary.

As in many other cases, the search condition here must be more narrowly tailored for its purpose, in accordance with *Ricardo P.* Thus, we will strike the condition and remand to the juvenile court for it to tailor the condition more narrowly to the court's legitimate concerns, in accordance with the above principles and the following suggestions—for example, to state that the searching of minor's electronic data is *for the limited purposes of searching for contacts or attempted contacts with V1 or V2, contacts or attempted contacts to secure future victims, and access to sexually explicit or pornographic material primarily intended to sexually arouse.* Further, minor's consent to the search and seizure of his electronic data may be *limited to data relevant to the above-stated purposes.* The court may add other limitations as it sees fit, such as a temporal limitation that prevents the searching of historical data—for example, specifying that the searches are *limited to the time period since the imposition of probation.*

As noted, we also strike conditions 25 and 27 because they support and implement the search condition, and are irrelevant without it. If the juvenile court chooses to reimpose condition 26, it may reimpose conditions 25 and 27 as well, but we suggest

modifying condition 25 to permit the *probation officer*, as well as the juvenile court, to make exceptions to the condition.

## II.    Probation Conditions 7 and 12

Minor contends conditions 7 and 12 are impermissibly vague. We agree the conditions should be clearer.

### A.    *Conditions*

Condition 7 states: "Not use, possess, or be under the influence of any alcoholic beverage or illegal or intoxicating substance, or possess any associated paraphernalia." Minor argues "intoxicating substance" and "associated paraphernalia" are vague because an "intoxicating substance" could be a narcotic prescribed by a physician and "associated paraphernalia" could be a wine glass or a beer bottle.

Condition 12 states: "Immediately submit to chemical testing in the form of, but not limited to, blood, breath, urine, or saliva on the direction of the probation officer or a peace officer." Minor argues "chemical testing" is vague because it fails to limit the purpose of testing to alcoholic, illegal, or illicit substances.

### B.    *Law*

"A probation condition 'must be sufficiently precise for the probationer to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness." (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) The "underpinning of a vagueness challenge is the due process concept of 'fair warning.' " (*Ibid.*) A probation condition is not unconstitutionally vague if it provides "adequate notice—'fair warning'—of the conduct proscribed." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153, quoting *Sheena K.*, at p. 890.) " ' " ' "Fair notice requires only that a violation be described with a " 'reasonable degree of certainty' " … so that 'ordinary people can understand what condition is prohibited.' " ' " ' " (*In re Byron B.* (2004) 119 Cal.App.4th 1013, 1018.) "A probation condition which either forbids or requires the doing of an act in terms so

15.

vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application, violates due process." (*People v. Freitas* (2009) 179 Cal.App.4th 747, 750, disapproved on other grounds in *People v. Hall* (2017) 2 Cal.5th 494.) A probation condition is unconstitutionally overbroad "if it imposes limitations on the probationer's constitutional rights and it is not closely or narrowly tailored and reasonably related to the compelling state interest in reformation and rehabilitation." (*People v. Forrest* (2015) 237 Cal.App.4th 1074, 1080.) A challenge to a probation condition as facially vague presents a pure question of law appropriate for de novo review. (*Sheena K.*, at pp. 888–889.)

### C. Analysis

We agree that these two conditions would benefit from clarification. Thus, we strike both conditions and remand for the juvenile court to modify them in accordance with the above principles and the following suggestions. For condition 7, we suggest the addition of language that specifies that an intoxicating substance is prohibited *unless prescribed by a physician and used as prescribed*, and language that specifies the paraphernalia is *drug paraphernalia*. For condition 12, we suggest language that specifies the chemical testing is *chemical testing for drugs and/or alcohol*.

### DISPOSITION

Probation conditions 7, 12, 25, 26, and 27 are stricken. The matter is remanded to the juvenile court to modify the conditions in accordance with the principles and suggestions in this opinion and to reimpose them, if the court so chooses. In all other respects, the findings and orders of the juvenile court are affirmed. On remand, the juvenile court is directed to forward a copy of the corrected probation order to the appropriate entities.