Filed 9/20/22 P. v. Holston CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>THERON KENNETH HOLSTON,<br><br>    Defendant and Appellant. | C092137, C092171<br><br>(Super. Ct. Nos. P20PAR0005, P20PAR0036) |

In this consolidated appeal, defendant Theron Kenneth Holston, who has a lengthy criminal history and is most recently on parole for felony resisting arrest, challenges the denials of his two requests to modify certain parole conditions. Defendant contends numerous conditions are unreasonable and unconstitutional as applied to him. Concluding defendant forfeited many of his contentions and has failed to establish error as to the others, we will affirm the trial court orders.

BACKGROUND

Although the record provides few details about defendant, his victims, or the nature of his prior criminal conduct, it shows that since 1986 when he was convicted of

1

misdemeanor indecent exposure, he has been convicted of seven misdemeanors and 10 felonies, including felony sexual battery in 1987, and felony indecent exposure in 2001 for which he was sentenced to three years in prison. In 2009, he was sentenced to five years in prison for felony theft. On December 6, 2018, he was sentenced to two years in prison for resisting arrest.

Defendant was paroled on October 31, 2019. According to his parole agent, Shane Alderson, defendant immediately absconded, used methamphetamine, and failed to attend mandated counseling. On December 19, 2019, defendant met with Agent Alderson, who explained the terms and conditions of his parole, which defendant signed. Because of his history of sex offenses, defendant was required to register as a sex offender under Penal Code section 290.[1] His 56 special conditions of parole included several conditions typically applied to section 290 parolees, including conditions governing sex offender treatment, global positioning system (GPS) monitoring, computer use and electronic media, searches of electronic devices, and employment.

The sex offender treatment conditions provided: "[10] You shall report to, and actively participate in a Division of Adult Parole Operations approved treatment program specific to sex offenders;" "[11] You hereby agree to polygraph examinations while on parole supervision, with the questioning limited to questions about the success of the sex offender treatment program, the crime(s) for which you were convicted, and related criminal behavior, whether past or future;" "[12] You agree to and will sign any necessary documents including a waiver of psychotherapist-patient privilege to allow full communication between your sex offender management professional and your parole agent as required by [Penal Code] Section 3008[, subdivision] (d)(4) and [Penal Code] Section 290.09;" and "[13] Upon reporting to sex offender treatment, you shall sign the

---

[1] Undesignated statutory references are to the Penal Code.

forms presented by the treatment provider, including an information release form and a 'Consent to Polygraph' form."

The GPS monitoring conditions provided: "[68] You shall participate in continuous electronic monitoring; e.g., [GPS] technology. I understand and acknowledge the GPS device continuously records my location and provides data to the Division of Adult Parole Operations. I understand and [acknowledge] the data is retained indefinitely and may be shared with other law enforcement agencies;" "[69] You may be charged criminally with grand theft, petty theft, or vandalism and be fined for the cost of the equipment's replacement in the event it is not returned, is purposely discarded, stolen, and/or damaged;" "[70] You are approved for a GPS modification: You shall maintain the GPS device on your person or ambulatory device 24 hours a day, 7 days a week, except when showering or sleeping. When showering or sleeping, you must keep the device within reach of your person;" "[73] You shall charge the GPS device at least two times per day (every 12 hours) for at least 1 full hour for each charging time;" "[74] You shall not tamper with the device or cover the device with any material that you know or reasonably should know will interfere with the GPS signal;" "[75] You shall contact your parole agent immediately if and when the device vibrates and/or makes an audible tone (beep);" and "[76] You shall not expose the device to extreme temperatures or place it under water; e.g., pool, hot tub, bath, etc."

The social media condition provided: "[84] You shall not use or access social media sites, social networking sites, peer-to-peer networks, or computer or cellular instant message systems; e.g., Facebook, Instagram, Twitter, Snapchat, Lync, Gmail, Yahoo, KIK Messenger, Tumblr, etc. This would include any site which allows the user to have the ability to navigate the internet undetected."

Finally, the employment conditions provided: "[36] You shall not obtain employment that allows you to enter a residence where a stranger resides;" and "[104] You shall not: seek or maintain employment that allows you to enter a private residence

3

or work near surrounding front, side or back yards (curtilage) or go within . . . 100 yards where a stranger resides." (Capitalization omitted.)

Defendant soon began violating these conditions. According to Agent Alderson, by early January, defendant had missed sex offender counseling sessions, failed to charge his GPS ankle monitor, and absconded again. Agent Alderson filed a petition for revocation that itemized defendant's noncompliance and Agent Alderson's attempts to locate and assist him. The petition concluded defendant had "refused to take advantage of this opportunity to remain in the community. He has made it clear through his actions that he has no intention of abiding by his conditions of parole and is therefore a danger to the community." His score on the "Static 99" (a diagnostic tool for predicting violent sexual behavior) was eight, indicating he posed a high risk. Furthermore, Agent Alderson reported defendant "has already received 3 prior parole violations in the short time he has been on the streets and he has now escalated his behavior to allowing his ankle monitor to not be charged. [Defendant's] behavior is dangerous and a review by the [trial court] appears appropriate."

Defendant filed a motion seeking modification of his parole conditions. His briefing asserted that the parole conditions associated with his sex offender status were invalid under *People v. Lent* (1975) 15 Cal.3d 481, 486 (*Lent*) because they were not related to defendant's most recent crime or his possible future criminality. While defendant asserted this defect contaminated all but nine of the conditions, he specifically analyzed only a subset of the supposedly invalid conditions, including, as relevant here, the conditions governing sex offender treatment, GPS monitoring, computer use and electronic media, and employment. Additionally, defendant asserted that some of the conditions, including the social media condition, were unconstitutionally overbroad. Finally, he claimed his status as a transient person made it difficult for him to comply with the GPS monitoring conditions.

4

At the April 6, 2020 revocation hearing, defendant admitted to violating parole and the trial court denied his motion. The trial court read and considered the motion, the petition for revocation, and relevant case law, including *Lent.* The trial court said it also looked at defendant's history and personal characteristics and noted that defendant had reviewed and signed the parole terms and conditions at the time of his release.

The trial court recognized defendant's most recent sex offense was in 2001, but noted the offense occurred 14 years after defendant's preceding sex offense. It determined that because defendant had been in prison roughly half the time since that last sex offense, the remoteness of defendant's prior sex offense carried less weight. The trial court said the appropriate inquiry in evaluating parole conditions was "not only related to the nature and circumstances of the current offense, but also to an individual's history and personal characteristics."

The trial court found the parole conditions reasonable given defendant's circumstances. Noting that defendant was designated a high-risk sex offender based on his Static 99 score, and that he had three prior parole violations and immediately absconded upon his October 31, 2019 release, the trial court concluded this "only solidifies the reasons to have a GPS monitoring device." The trial court agreed with Agent Alderson's report that defendant's behavior was escalating and again noted his extensive criminal history. As for the social media condition, the trial court recognized social media is a way to get information but noted Web sites and search engines could provide such information and that defendant could connect with family members via e-mail or the telephone. Thus, the trial court found that, although the parole conditions might not be related to defendant's most recent offense, "all of these conditions are reasonably related to deter future criminality by [defendant]." The trial court sentenced defendant to 176 days in county jail, which the trial court deemed time served, and reinstated his parole under the same conditions.

On April 29, 2020, Agent Alderson filed another revocation petition alleging defendant had again failed to participate in sex offender treatment and had disabled his GPS tracking device. At the May 14, 2020 revocation hearing, Agent Alderson testified that the sex offender treatment and GPS monitoring conditions were mandated by statute. Agent Alderson stated he had explained to defendant that other transient individuals had been able to charge their devices at a counseling center that was open six days a week, and at two other nearby locations. Defendant once again orally requested modification of certain parole conditions, but the trial court rejected defendant's argument that the application of the statutory provisions to him violated the ex post facto clause and, citing *Lent*, concluded again that both sets of conditions were "absolutely related to the possibility of future criminality." The trial court sentenced defendant to 180 days in county jail and reinstated parole under the original terms and conditions.

## DISCUSSION

Defendant urges us to strike numerous parole conditions because they are unreasonable and unconstitutional as applied to him. We conclude defendant forfeited certain challenges and has failed to establish error as to the other challenges.

Defendant urges us to strike conditions 10 through 13 (sex offender treatment), 22 (relationships), 28 (association), 35 through 37 (employment), 43 and 44 (residence), 46 through 55 (possessions), 68 through 76 (GPS monitoring), 77 (sex offender transient registration), 83 through 92 (computer use and electronic media), 93 through 95 (classified advertisements and miscellaneous conduct), and 103 and 104 (conduct and employment).

Appellate briefs must "support each point by argument and, if possible, by citation of authority." (Cal. Rules of Court, rule 8.204(a)(1)(B).) Because defendant provides neither argument nor citation to relevant authority as to conditions 22, 28, 35, 37, 43, 44, 46 through 55, 77, 91, 92, 94, 95, and 103, we decline to address those conditions. (See *People v. Hardy* (1992) 2 Cal.4th 86, 150.)

6

Challenges not raised in the trial court are generally forfeited. (*People v. Brand* (2021) 59 Cal.App.5th 861, 867, citing *People v. Welch* (1993) 5 Cal.4th 228, 234-235.) "A timely objection allows the court to modify or delete an allegedly unreasonable condition or to explain why it is necessary in the particular case." (*Welch*, at p. 235; *People v. Relkin* (2016) 6 Cal.App.5th 1188, 1195.) The lone exception to this rule -- for facial constitutional challenges that present a pure question of law -- is inapplicable where, as here, defendant asserts only as-applied challenges. (*Brand*, at p. 867, citing *In re Sheena K.* (2007) 40 Cal.4th 875, 887-889.)

Defendant did not object to condition 93 (classified advertisements) in the trial court. As to condition 90 (electronic devices searches), while defendant mentioned the condition in relation to pending federal litigation, he did not raise his objection in sufficient detail to enable the trial court to understand the basis for the objection or the remedy sought. Accordingly, defendant's challenges to those conditions are forfeited.

Defendant's appellate challenges to conditions 10 through 13 (sex offender treatment), 68 through 76 (GPS monitoring), 83 (computer monitoring),[2] 84 (social media), and 36 and 104 (employment) are based on *Lent* and constitutional principles as applied to him. In the trial court, however, his challenges to all but the social media condition were based solely on *Lent*. Therefore, except for the social media condition, defendant forfeited his constitutional challenges.

Consequently, our inquiry under *Lent* is limited to the conditions relating to sex offender treatment, GPS monitoring, social media, and employment; our constitutional inquiry is limited to the social media condition.

---

[2] Defendant's appellate challenge to condition 83 in substance addresses only constitutional issues and does not provide analysis based on *Lent*. Thus, his challenge to condition 83 under *Lent* is forfeited.

## A

" 'Parole conditions, like conditions of probation, must be reasonable since parolees retain "constitutional protection against arbitrary and oppressive official action." [Citation.] Conditions of parole must be reasonably related to the compelling state interest of fostering a law-abiding lifestyle in the parolee.' " (*People v. Navarro* (2016) 244 Cal.App.4th 1294, 1299.) Under *Lent*, " '[a] parole condition that bars lawful activity is valid only to the extent "the prohibited conduct either 1) has a relationship to the crime of which the offender was convicted, or 2) is reasonably related to deter future criminality." ' " (*People v. Austin* (2019) 35 Cal.App.5th 778, 787, quoting *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 685; *In re Stevens* (2004) 119 Cal.App.4th 1228, 1234; *Navarro*, at p. 1299; see *People v. Relkin, supra*, 6 Cal.App.5th at p. 1194; *Lent, supra*, 15 Cal.3d at p. 486.) "We review the imposition of parole conditions for an abuse of discretion." (*Navarro*, at p. 1299.) A trial court abuses its discretion when supervision conditions imposed are arbitrary, capricious, or exceed the bounds of reason. (See *People v. Welch, supra*, 5 Cal.4th at pp. 233-234.)

Defendant argues the conditions relating to sex offender treatment, GPS monitoring, social media, and employment are not reasonably related to deterring future criminality because they are standard parole conditions applied to him formulaically based on his status as a section 290 registrant rather than an individualized assessment.

Convicted sex offenders such as defendant must register with law enforcement officials in the communities in which they reside. (§ 290, subd. (c).) " 'The purpose of section 290 is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future.' " (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527.) The registration requirement of section 290 protects public safety "[b]y providing for the collection of information about the identity and whereabouts of convicted sex offenders," which "makes it harder for such persons to reoffend without

getting caught." (*In re Alva* (2004) 33 Cal.4th 254, 288.) Parolees convicted of a sex offense are subject to statutorily prescribed sex offender treatment conditions similar to those defendant challenges, as well as mandatory GPS monitoring. (§§ 3008, subd. (d), 3004, subd. (b).) CDCR is required to place an offender on intensive and specialized parole supervision if they pose a high risk based on their Static 99 score. (§§ 3008, subd. (a), 290.04, subd. (b); Cal. Code Regs., tit. 15, § 3573.) Furthermore, CDCR has "sole discretion to decide which persons shall be supervised using continuous electronic monitoring . . . ." (§ 3010.5, subd. (a).)

Defendant did not and does not challenge his high-risk classification. Thus, the trial court was required, as are we, to presume that assessment and the attendant conditions were proper. (Evid. Code, § 664 ["[i]t is presumed that official duty has been regularly performed"].) As the moving party, it was defendant's burden to overcome this presumption and to affirmatively provide sufficient reasons for the trial court to grant his motion to modify the conditions. (See *People v. Ochoa* (2016) 248 Cal.App.4th 15, 29, fn. 3 ["[g]enerally, the moving party bears the burden to put the supporting evidence before the court"].) He did not meet his burden.

Apart from a list of defendant's prior convictions in Agent Alderson's report, the record lacks any specific details about defendant's criminal history that could firmly establish the lack of a reasonable relationship between a particular condition and his propensities. Defendant attested to the burdens imposed on him by certain conditions, noted the age of his last sex offense, argued the indecent exposure offense was relatively less serious, and argued that social media hardly existed when defendant committed his most recent sex offense in 2001. But defendant has a lengthy criminal history, he is designated a high-risk sex offender based on his Static 99 score, and there is no doubt social media can now be used to target victims.

Based on the record before it, the trial court properly accounted for defendant's individual circumstances, including his high-risk designation, the long span between his

9

prior sex offenses, his recidivism, and his parole violations. The trial court recognized the burdens the challenged conditions imposed on defendant but found they were reasonable given defendant's high-risk status and escalating misconduct. In drawing this conclusion, the trial court properly relied on Agent Alderson's expertise and familiarity with defendant, as embodied in the report accompanying the revocation petition. (See *People v. Navarro, supra*, 244 Cal.App.4th at pp. 1299-1300 [trial court properly relied on department's conclusion that there was a nexus between parolee's underlying behavior and the behavior being restricted]; Evid. Code, § 664.)

The trial court did not abuse its discretion in denying defendant's motions to modify the terms of his parole based on his challenges under *Lent*.

B

Defendant also asserts the social media condition is unconstitutionally overbroad as applied to him because it impermissibly burdens his rights of free speech and association. "An overbreadth challenge considers whether limitations are narrowly tailored to their purpose." (*People v. Austin, supra*, 35 Cal.App.5th at p. 787.) We independently review such challenges. (See *People v. Prowell* (2020) 48 Cal.App.5th 1094, 1099.)

Here, defendant again relies on the lack of evidence that he used the Internet or social media in the commission of his sex offenses. But this evidentiary gap arose from his failure to present specific details regarding his criminal history that affirmatively demonstrate he did not *and would not* use such technology for predatory purposes. Such information is relevant to determining whether the condition is narrowly tailored. Here, because defendant has not provided information specific to his criminality, matters essential to deciding the merits of his as-applied constitutional challenge is not sufficiently established by the record to permit us to decide the claim. (*In re E.J.* (2010) 47 Cal.4th 1258, 1281.) Defendant's overbreadth challenge fails.

10

## DISPOSITION

The trial court orders are affirmed.

_____/S/_____
MAURO, Acting P. J.

We concur:

_____/S/_____
RENNER, J.

_____/S/_____
EARL, J.

11