Filed 5/3/19; pub. order 5/24/19 (see end of opn.)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>RICHARD AUSTIN,<br><br>  Defendant and Appellant. | D073523<br><br><br>(Super. Ct. No. PLBB0640) |

APPEAL from an order of the Superior Court of San Diego County,
Lorna A. Alksne, Judge.  Reversed.

Aurora Elizabeth Bewicke, under appointment by the Court of Appeal, for
Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney
General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Collette C.
Cavalier, Deputy Attorneys General, for Plaintiff and Respondent.

Richard Austin appeals an order finding him in violation of a special condition of parole (condition 25) restricting him from contacting the "crime victim(s)" in case No. SCE350433, specified as "Lisa [H.] or Brent [M.]"  According to Austin, a later order in case No. SCE350433 made clear that the "crime victim" in that case was Brent, *not* Lisa. He claims this order had a preclusive effect as to the meaning of parole condition 25, or at a minimum that condition 25 was unconstitutionally vague and overbroad.  Austin does not contend a properly worded no-contact condition restricting contact with Lisa would be invalid.  Rather, he argues that the condition is vague *as written*, particularly in light of the finding in the underlying case that Lisa was never a protected party.  As we explain, we find that contention meritorious on our record and reverse the order.

FACTUAL AND PROCEDURAL BACKGROUND

In May 2015, Austin was charged with several offenses arising out of a domestic violence incident involving his girlfriend Lisa H. and an assault on Lisa's adult son Brent M. the following day.  He pleaded guilty to a single count, assault by means likely to produce great bodily injury as to Brent (Pen. Code, § 245, subd. (a)(4)), and admitted a prior serious felony conviction.[1]  All remaining counts and allegations were dismissed.

During sentencing, the court struck the prior strike and placed Austin on formal probation for three years.  It did not impose a condition restricting contact with Lisa at that time.  When the probation order listed a no-contact restriction (condition 10j), prompting Austin's later arrest for contacting Lisa, the court found no violation, stating

---

1       Further statutory references are to the Penal Code unless otherwise indicated.

"[t]here is no protective order in this case" and deleting condition 10j from the order granting probation.

Austin later tested positive for controlled substances, violating the terms of his probation. In September 2016, defense counsel sought reinstatement of probation, while the prosecution requested a three-year middle term. The court revoked probation, sentencing Austin to three years with credit for time served. After Austin appealed, we remanded for the sole purpose of clarifying the court's ruling during sentencing. (*People v. Austin* (Aug. 15, 2017, D071255) [nonpub. opn.].)

Austin was released on parole in July 2017. He acknowledged receiving notice of the general and special conditions of his parole. Among the special conditions of parole was condition 25:

> "You shall not contact or attempt to contact your crime victim(s): [No.] SCE350433 PC 245[](a)([4]) Assault w/Force Likely to Produce GBI Lisa [H.] or Brent [M.] . . . 'No contact' means no contact in any form, whether direct or indirect, personally, by telephone, by writing, electronic media, computer, or through another person, etc."[2]

In October 2017, the California Department of Corrections and Rehabilitation (CDCR) filed a parole revocation petition (§ 1203.2, subd. (b)(1)), alleging Austin had violated the terms of his parole by contacting Lisa and using drugs. Austin waived an evidentiary hearing and was ordered to serve 120 days in custody for both violations.

---

[2]     Special parole condition 24 barred Austin from traveling near where "your victim(s)" Lisa or Brent lived, worked, or attended classes. Likewise, condition 26 barred him from harassing, stalking, or committing further crimes against "the victim(s)" Lisa or Brent. These related conditions are not at issue on appeal.

On December 6, 2017, the court in case No. SCE350433 held a hearing following remittitur to clarify the sentence imposed. The court indicated it had revoked probation in September 2016, sentenced Austin to three years in state prison, and given him credit for time served. It further clarified "for any parole officer" that there was no protective order in place: probation condition 10j barring contact with Lisa had been deleted. Defense counsel asked the court to make it "crystal clear for the future parole agent who supervises Mr. Austin, that the victim in this case was Brent [M.], . . . not Lisa [H.]" The prosecutor agreed that the victim was Brent, not Lisa. The court stated, "Okay. The record and the minute order will reflect that." It went on to explain that Brent was no longer a protected party and Lisa "should never have been a protected party." Consistent with these findings, the minute order stated: "Protective order is no longer in effect against Brent [M.] The court finds Lisa [H.] was never a protected party."

Austin failed to report to his parole agent within 24 hours of being released from custody. CDCR filed a parole revocation petition, prompting the court to impose a 16-day sentence in mid-December. Austin and Lisa got married on December 27, and he was arrested on January 4, 2018 for violating parole condition 25. CDCR filed another parole revocation petition. This time, Austin requested an evidentiary hearing.

On January 29, 2018, the court heard testimony from Lisa, the police officer who arrested Austin, Austin's parole agent, and the public defender who represented Austin at the December 6 hearing in the underlying case. Lisa testified she did not want to remain married but did want to maintain contact and was not afraid of Austin. Lisa's account was challenged by Hilda P., Austin's parole agent, who testified that Lisa had expressed

4

her fear of Austin several times through text messages. Hilda had seen a copy of the December 6 minute order in the underlying case, but she and her supervisor concluded the no-contact parole condition could be validly imposed given the nexus between Lisa and the convicted offense. Hilda explained that the parole condition would be lifted if Lisa wanted contact after Austin completed his anger management classes.

Austin's counsel called the public defender to the stand to explore events in the underlying case. The court questioned the relevance of her testimony, stating, "this is not a probation case, this is a parole case." "The fact that parole made it a condition is not my jurisdiction. . . . They paroled him with that condition. That's what I'm stuck with." When defense counsel stated parole condition 25 was based on a dismissed charge in the underlying case, the court replied, "[t]hat might be an appellate issue, but he signed the parole conditions. [¶] I don't know where the jurisdiction is, counsel. Do you know what -- how do you change a parole condition? [¶] I can't not violate someone because a judge in a trial court said he shouldn't have a protective order for that." The court rejected the offer of proof by Austin's counsel that rulings by the probation court would provide a basis to invalidate a parole condition as unreasonable. It further asked: "What legal authority do I have to change a parole condition after it has been imposed for over two years?"

After both sides rested, the court heard arguments from counsel. The prosecutor clarified that "the court does have discretion to modify the terms and conditions of Mr. Austin's parole in the interest of justice" but argued it should not exercise that discretion. Citing *People v. Burgener* (1985) 41 Cal.3d 505 (*Burgener*), defense counsel stated the

5

court had authority to determine the reasonableness of parole conditions. The court asked whether *Burgener* was a parole case; defense counsel stated it was. Shifting focus, the court probed whether Austin had challenged parole condition 25 through an administrative appeal. Defense counsel said he had not but did not willfully violate parole. As she explained, Austin was "hearing two separate things from two people who seemingly have authority." "So, which one is he supposed to follow when a judge is telling him just to show the docket to a parole agent and then things will be all cleared up?" "He continues to be arrested and put into custody for contacting a person that a court has told him he's able to contact."

The prosecutor argued there were changed circumstances—Lisa had repeatedly contacted Austin's parole agent asking for help and expressing fear. Under these facts, CDCR was entitled to condition resumed contact on Lisa's approval and on Austin taking anger management classes. The court agreed, revoking parole and imposing a 180-day commitment.

After the court made its ruling, defendant Austin interjected that he had not violated the plain terms of parole condition 25. He asked, "show me in black and white where she's my victim." "Your honor, all I want you to do is re[ad] condition parole number 25. That's all I ask. Read that out loud." The court responded that it didn't believe it had authority to change the parole condition and directed Austin to "go back to your parole officer." The minute order stated, "Parole is to maintain control of the no contact order with Lisa."

6

Austin argues the court misconstrued its authority to invalidate or modify condition 25. Although he appears to concede on reply that a differently framed no-contact condition as to Lisa *could* validly be imposed, he challenges the condition actually imposed as vague in light of the December 6 ruling that Brent, not Lisa, was the victim and protected party in the underlying case.

The People argue these claims are not properly before us. To the extent we address them, the People focus on the merits of a generic no-contact condition restricting contact with Lisa and suggest it was reasonably imposed. They further claim Austin forfeited his vagueness and overbreadth challenges by failing to object below.

We reject the threshold issues raised by the People and evaluate the merits of Austin's claims. The court misconstrued its authority to construe and/or invalidate a parole condition. On our record, condition 25 as worded was unconstitutionally vague, particularly given the December 6 order in the underlying case.[3]

A.    *Threshold Issues*

The People raise four threshold arguments as to why Austin's claims on appeal are not properly before us. Addressing these in turn, we conclude none have merit.

---

[3]    Contrary to the People's claim, the vagueness challenge was not forfeited. Defense counsel stated Austin was "hearing two separate things" from different courts and, lacking clear directive on "which one he is supposed to follow," he "continue[d] to be arrested and put into custody for contacting a person a court has told him he's able to contact." Austin asked the court to "Read [condition 25] out loud" and "show me in black and white where she's my victim." On this record, Austin's as-applied vagueness challenge to condition 25 is preserved for appellate review.

The first two are related.  The People contend Austin was required to administratively appeal the condition and that the proper vehicle, habeas corpus, cannot be pursued until he has exhausted that process.  In support, they cite *In re Hudson* (2006) 143 Cal.App.4th 1, 7, which recognized the "well settled" rule that "inmates must exhaust available remedies before filing a petition for habeas corpus in the courts."  But we are not reviewing a habeas petition; we are considering a challenge to a parole condition raised during a revocation hearing.  *People v. Navarro* (2016) 244 Cal.App.4th 1294, 1300 (*Navarro*) addressed this type of challenge by direct appeal, and we follow suit.  The lack of an administrative appeal has no bearing on Austin's right to contest the validity of condition 25 at his parole revocation hearing.  (See, e.g., *People v. Hackler* (1993) 13 Cal.App.4th 1049, 1056 [rejecting claim that defendant forfeited his overbreadth challenge to a probation condition by failing to attack the order granting probation by direct appeal or habeas petition].)

Next, the People claim Austin has not provided an adequate record "to evaluate CDCR's decision to impose the no-contact order."  We disagree.  The parole agent testified why CDCR believed a no-contact restriction was necessary during the revocation hearing.  Austin's vagueness challenge centers on a written parole condition and the December 6 ruling in the underlying case, both included in our record on appeal.

Finally, the People argue that Austin's challenge to parole condition 25 is untimely, noting that Austin did not challenge the condition during parole revocation proceedings in October 2017.  As a factual matter, Austin's parole was revoked in October 2017 for *two* alleged violations—contacting Lisa and using drugs.  Having

8

signed a voluntary statement *admitting* to using methamphetamine, Austin might have viewed an objection to condition 25 as a futile exercise during the earlier proceeding. In addition, the ruling on December 6, 2017 arguably highlighted new vagueness concerns as to condition 25. Moreover, procedural bars to habeas relief for unreasonable delay (see *In re Reno* (2012) 55 Cal.4th 428, 452) have no application to issues properly raised by direct appeal.

B.      *Mootness*

Austin was sentenced to a 180-day parole revocation term in January 2018, and that term has long since ended. Austin argues we should consider his challenges to parole condition 25 notwithstanding his release because the case involves issues of public importance likely to recur. The People do not claim otherwise.

Under similar circumstances, courts have entertained technically moot challenges to parole conditions. (*People v. DeLeon* (2017) 3 Cal.5th 640, 645−646 (*DeLeon*); *Navarro, supra,* 244 Cal.App.4th at p. 1298; see generally, *Morrissey v. Brewer* (1972) 408 U.S. 471, 484 [noting societal interest in not revoking parole based on "an erroneous evaluation of the need to revoke [it]"].) We exercise our discretion to adjudicate Austin's appeal notwithstanding the completion of his revocation term.

C.      *The Court Erred in Finding a Violation of Condition 25*

1.      *Background on parole conditions and revocation procedures.*

The Legislature has declared that the period immediately following incarceration is critical to successful reintegration of offenders, warranting effective parolee supervision and judicious revocation actions. (§ 3000, subd. (a)(1).) Before an inmate's

9

release, CDCR meets with each inmate to provide him or her with the conditions of parole. (§ 3000, subd. (b)(7).) Conditions may "govern the location in which the parolee resides, the persons with whom he associates and lives, the places to which he may travel, his use of intoxicants, and other aspects of his life." (*Burgener*, *supra*, 41 Cal.3d at p. 531.) Violation of the terms of parole may lead to its revocation and defendant's return to prison. (*Ibid.*)

Historically, the Board of Parole Hearings conducted parole revocation hearings. (*DeLeon*, *supra*, 3 Cal.5th at p. 647.) That changed under the Criminal Justice Realignment Act, which shifted jurisdiction over most revocation petitions to the superior courts. (*Ibid.*; see § 3000.08, subds. (a), (f), added by Stats. 2011, ch. 39, § 38 [Assem. Bill No. 117]; amended by Stats. 2012, ch. 43, § 35 [Sen. Bill No. 1023].) In 2012, the Legislature amended section 1203.2 to provide a uniform process for petitions to revoke probation, mandatory supervision, postrelease community supervision, and parole. (*DeLeon*, at p. 647; see § 1203.02, as amended by Stats. 2012, ch. 43, § 30 [Sen. Bill No. 1023].)

"Together, sections 1203.2 and 3000.08 establish a statutory framework for parole revocation." (*DeLeon*, *supra*, 3 Cal.5th at p. 647.) If a person violates the conditions of his or her parole, the parole authority may impose additional conditions of supervision and "intermediate sanctions" without court intervention. (§ 3000.08, subd. (d).) But if intermediate sanctions are inappropriate, it may petition to revoke parole. (§ 3000.08, subd. (f).) At a parole revocation hearing, if a court finds a parole violation, it has the option to "[r]eturn the person to parole supervision *with modifications of conditions*, if

10

appropriate" or revoke parole and order confinement up to 180 days. (§ 3000.08, subds. (f)–(g), italics added.) "The court may modify or revoke parole if the interests of justice so require." (*DeLeon*, at p. 647; see § 1203.2, subd. (b)(1).)

Because parolees retain constitutional protection against arbitrary and oppressive official action, "parole conditions, like conditions of probation, must be reasonable." (*Burgener*, *supra*, 41 Cal.3d at p. 532; see *Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 685 (*Kevin R.*); *In re Stevens* (2004) 119 Cal.App.4th 1228, 1234.) "A parole condition that bars lawful activity is valid only to the extent 'the prohibited conduct either 1) has a relationship to the crime of which the offender was convicted, or 2) is reasonably related to deter future criminality.' " (*Kevin R.*, at p. 685; *People v. Lent* (1975) 15 Cal.3d 481, 486 [establishing test]; see *People v. Martinez* (2014) 226 Cal.App.4th 759, 764 ["[t]he validity and reasonableness of parole conditions is analyzed under the same standard as that developed for probation conditions"].) In addition, parole conditions may not be unconstitutionally vague or overbroad. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 889 (*Sheena K.*).) To withstand a vagueness challenge, a condition must be sufficiently precise for parolees to know what is required of them and whether the condition has been violated. (*Id.* at p. 890.) An overbreadth challenge considers whether limitations are narrowly tailored to their purpose. (*Ibid.*)

2.      *The court misconstrued its authority.*

During the revocation hearing, Austin challenged parole condition 25 as unreasonable, overbroad, and vague. In revoking parole, the court repeatedly expressed its view that it lacked authority to invalidate a parole condition on these grounds. When

11

Austin asked the court to "show me in black and white where she's my victim", the court responded that it could not change the condition and told him to "go back to your parole officer." We agree with Austin that the court misconstrued its authority: "the courts have the power to pass on the constitutionality or validity of parole conditions and may require their modification." (*Kevin R.*, *supra*, 191 Cal.App.4th at p. 685.) The People's reading of the record—that the court was "aware of its discretion" but decided condition 25 was "constitutionally valid and properly imposed"—is strained. Although the People argue we review a revocation decision for abuse of discretion, the "failure to exercise discretion *is* an abuse of discretion." (*People v. Orabuena* (2004) 116 Cal.App.4th 84, 99, italics added.)

Even though the court misconstrued its authority, remand is not necessary on our record. We are presented with pure legal issues on uncontested facts. (See *People v. Baker* (2018) 20 Cal.App.5th 711, 721−722 [although court misconstrued the scope of its sentencing authority, remand was unnecessary because appellate court could decide the constitutional claim on de novo review].) Austin claims that the December 6 order had preclusive effect and *modified* parole condition 25. Alternately, he argues that condition 25 was vague and overbroad in light of that order. We may independently review these claims. (See *Roos v. Red* (2005) 130 Cal.App.4th 870, 878 [collateral estoppel]; *People v. Forrest* (2015) 237 Cal.App.4th 1074, 1080 (*Forrest*) [constitutional challenges to probation conditions].)

12

3. *Parole condition 25 is vague as applied.*

Turning to the merits of Austin's claims, we conclude the December 6 ruling in the underlying case did not modify parole condition 25 or otherwise have preclusive effect. Nevertheless, that ruling and other factors lead us to agree with Austin that condition 25 was vague as applied.

a. *Collateral estoppel*

Austin argues the December 6 finding in the underlying case "should have been construed to have already modified the parole condition by finding Lisa H. was not a crime victim." He claims: "because the sentencing court in case [No.] SCE350433 made an express factual determination that Lisa H. was not a crime victim in that case, the parole revocation court should have been barred from making an implied factual ruling to the contrary." Although packaged as "res judicata," Austin is asserting collateral estoppel, or *issue* preclusion. (See *DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823 [distinguishing the concepts].)

The argument fails at the threshold. A prerequisite of collateral estoppel is that the issue was "necessarily decided" in a prior proceeding. (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342 (*Lucido*).) This means that the resolution of the issue was not " 'entirely unnecessary' to the judgment in the initial proceeding." (*Ibid.*; *People v. Parham* (2003) 111 Cal.App.4th 1178, 1182.) Whether Lisa was a victim in case No. SCE350433 was entirely unnecessary to resolve the issues before the court at the December 6 hearing in the underlying case. The sole purpose of that proceeding was to

13

clarify the sentence the court previously imposed upon revoking probation following remittitur of an unrelated appeal.

Even if the threshold elements were met, public policy would not favor its application. Factual findings made during probation revocation hearings do not bar relitigation of those allegations in a criminal *trial*. (*Lucido*, *supra*, 51 Cal.3d at p. 339.) The two proceedings serve different purposes—"[a] probation revocation hearing assesses whether conditions relating to punishment for a prior crime have been violated so that probation should be modified or revoked; a criminal prosecution seeks conviction for wholly new offenses." (*Id.* at pp. 347−348; see *People v. Ochoa* (2011) 191 Cal.App.4th 664, 673 [no bar under *Lucido*]; compare *People v. Quarterman* (2012) 202 Cal.App.4th 1280, 1293 [collateral estoppel did bar second probation revocation hearing on identical violation previously alleged and rejected].) Similarly, the December 6 hearing and parole revocation hearings served entirely distinct objectives. As in *Lucido*, the policies underlying collateral estoppel—public confidence in the judicial system, judicial economy, and preventing harassment through vexatious litigation—would not be served by its application. (*Lucido*, at pp. 343, 348, 351.)

In short, the sentencing court's determination in the underlying case that Lisa was never a protected party did not modify condition 25 or have *preclusive* effect on Lisa's status as a crime victim at the parole revocation hearing.

b.      *Vagueness*

Although the December 6 order had no preclusive effect, it may still be relevant in determining whether parole condition 25 was unconstitutionally vague as applied. A

14

vagueness challenge is rooted in the due process concept of " 'fair warning.' " (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) "In deciding the adequacy of any notice afforded those bound by a legal restriction, we are guided by the principles that 'abstract legal commands must be applied in a specific *context*,' and that, although not admitting of 'mathematical certainty,' the language used must have ' "*reasonable* specificity." ' " (*Ibid.*) Like a term of probation, a parole condition " 'must be sufficiently precise for the [parolee] to know what is required of him, and for the court to determine whether the condition has been violated,' if it is to withstand a challenge on the ground of vagueness." (*Ibid.*) We give a challenged condition " 'the meaning that would appear to a reasonable, objective reader.' " (*People v. Olguin* (2008) 45 Cal.4th 375, 382.)

The facts here are uncontested. Parole condition 25 restricted Austin from contact with the "crime victim(s)" in case No. SCE350433, specified as "Lisa [H.] or Brent [M.]" Austin's parole agent Hilda construed this to bar any contact with Lisa unless Austin took anger management classes and Lisa agreed to contact. Although Lisa was not the victim of the aggravated assault on Brent, Hilda found a sufficient nexus between Lisa and the convicted offense for the condition to apply. Austin's parole was earlier revoked, partly for his contact with Lisa, and he served a 120-day revocation term.

Then on December 6, 2017, the court in the underlying case received the remittitur from an unrelated appeal. It clarified the sentence imposed upon revocation of probation. Thereafter it highlighted "for any parole officer" that there was no protective order currently in place and that the protected party in case No. SCE350433 was at all times Brent, *not* Lisa. When defense counsel asked "to clarify for the record so that it's crystal

15

clear for the future parole agent who supervises Mr. Austin, that the victim in this case was Brent [M.] . . . not Lisa [H.]," the prosecutor agreed with that characterization, and the court stated "[t]he record and the minute order will reflect that." The minute order indicated Lisa "was never a protected party."

Austin gave this information to Hilda, who then checked with her supervisor before concluding the parole condition was nevertheless validly imposed. No attempt was made to modify or clarify the condition to address the patent ambiguity. Austin married Lisa on December 27. A month later his parole was revoked for contacting Lisa.

As Austin makes clear on appeal, he is not arguing "that parole could not have or could not still issue some valid condition involving Lisa H., which [he] would be required to sign and to adhere." He concedes a *properly* worded condition could be imposed but contends that in context parole condition 25 *as worded at the time of the alleged violation* was unconstitutionally vague.

On our record, we agree. The condition precluded contact with the crime victims and specified Lisa *or* Brent. Although the People claim referring to Lisa as a "crime victim" did not render it unclear, an objective reader—especially one who attended the December 6 hearing—would view parole condition 25 as precluding contact with *only* Brent, *not* Lisa. The different statutory definitions of "victim" offered by the People underscore the many interpretations of that term and the likely confusion resulting from the phrasing of the condition, particularly in light of the December 6 minute order. (*Navarro*, *supra*, 244 Cal.App.4th at p. 1302 [condition restricting parolee's Internet use was vague because it did not give fair warning of what conduct was prohibited]; compare

16

*Forrest*, *supra*, 237 Cal.App.4th at pp. 1081−1082 [dictionary definitions of certain words did not render conditions vague when, in context, no reasonable person would construe the conditions as the probationer suggested].)  On our record, condition 25 lacks reasonable specificity and is unconstitutionally vague.[4]

In that Austin concedes that a valid no-contact order *could* be crafted as to Lisa, we leave it to the court on remand to consider appropriate modifications to parole condition 25 that do not label Lisa as a "crime victim."  Any such modifications may also warrant revision of parole conditions 24 and 26, related restrictions that also refer to Lisa as a "crime victim."  (See fn. 2, *ante*.)  The parties may raise any challenges to the propriety of a no-contact order involving Lisa, or to the wording of any modification, on remand.

_____

[4]    Because we find the condition invalid on vagueness grounds, we need not address Austin's challenge that the condition is unconstitutionally overbroad. (*Navarro*, *supra*, 244 Cal.App.4th at p. 1302.)

## DISPOSITION

The order is reversed, and the matter is remanded for further proceedings to consider whether to modify special condition 25 of parole consistent with this opinion.


DATO, J.

WE CONCUR:


BENKE, Acting P. J.


GUERRERO, J.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RICHARD AUSTIN,<br><br>    Defendant and Appellant. | D073523<br><br>(Super. Ct. No. PLBB0640)<br><br><br>AMENDED ORDER GRANTING<br>REQUESTS FOR PUBLICATION |

THE COURT:

The opinion in this case filed May 3, 2019, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the requests pursuant to rule 8.1120(a) for publication are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

19

BENKE, Acting P. J.

Copies to:  All parties