Filed 11/7/24  P. v. Heer CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ALBERT VANJACOBWAYNE HEER,<br><br>    Defendant and Appellant. | F087561<br><br>(Super. Ct. No. 1485079)<br><br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Stanislaus County.  Dawna Reeves, Judge.

Joy A. Maulitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Erin Doering, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]        Before Peña, Acting P. J., Smith, J. and DeSantos, J.

Defendant Albert Vanjacobwayne Heer pled no contest to continuous sexual abuse of a child. He was sentenced to 12 years in prison, required to register as a sex offender, and, in August 2023, was released on parole. One of the conditions of his parole required defendant to not "use or access social media sites, social networking sites," or other similar sites. On October 27, 2023, defendant's parole agent determined that defendant created a profile on a dating website, had uploaded photos of himself, and had messaged multiple women. The parole agent filed a parole violation report and the trial court found true the violation of parole. On appeal, defendant contends the condition of parole was facially vague and overbroad as applied. The People disagree, arguing the condition is not vague and is narrowly tailored to defendant's crime and status as a high-risk sex offender. We affirm.

## PROCEDURAL SUMMARY

On December 31, 2015, the Stanislaus County District Attorney filed an information charging defendant with continuous sexual abuse of a child (Pen. Code, § 288.5, subd. (a); count 1)).

On April 26, 2016, defendant pled no contest to count 1 in exchange for a stipulated 12-year term (the middle term). Defendant was advised that as a result of his plea, he would be required to register as a sex offender. He was sentenced on the same date to the stipulated sentence.

On or about August 3, 2023, defendant was released on parole and designated a high-risk sex offender. Defendant signed a special conditions of parole form that provided, among other things:

> "You shall not use or access social media sites, social networking sites, peer-to-peer networks, or computer or cellular instant message systems (e.g., Facebook, Instagram, Twitter, Snapchat, Lync, KIK Messenger, and Tumblr), without express permission of your parole agent. In addition, you shall not use or access any social media sites, social networking sites, peer-to-peer networks, or computer or cellular instant message systems (e.g., Facebook, Instagram, Twitter, Snapchat, Lync, KIK

2.

Messenger, and Tumblr) that allow you to navigate the internet anonymously such that either other users or parole authorities cannot identify you."

On October 27, 2023, defendant's parole agent conducted a search of defendant's cellphone. The parole agent found defendant was accessing an adult "sex dating website" using a profile that included pictures of defendant and his genitalia. Defendant "had numerous messages with different females attempting to have sex and meet up." He was then arrested for a parole violation.

On January 26, 2024, the trial court found true the parole violation and revoked defendant's parole.

On February 1, 2024, defendant filed a notice of appeal.

## FACTUAL SUMMARY[1]

During the change of plea hearing, defendant admitted he engaged in three or more acts of lewd and lascivious conduct on an eight-year-old child.

At the January 26, 2024 violation of parole hearing, the trial court explained that "[t]he fact[s] of this underlying case are that [defendant] had access to the child … by befriending the child's mother, maybe even having a relationship with the mother."[2]

## DISCUSSION

Defendant argues that the social media condition of parole was facially vague and overbroad. Specifically, he argues that the condition is unconstitutionally vague because

[1] Defendant pled no contest to count 1, and the parties stipulated that the trial court could consider the preliminary hearing transcript in determining whether there was a factual basis for the plea. The preliminary hearing transcript is not part of the record before us. Because defendant's overbreadth challenge is at least in part an as-applied challenge, it was his obligation to certify an adequate record to determine whether his challenge has merit. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 609 [" 'Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant]' "].) Nevertheless, we provide the factual summary possible on this record.

[2] The trial court's statement is consistent with the parole agent's violation of parole report and the People's briefing below.

3.

the term "social media" failed to provide him fair notice of the kinds of websites that constitute social media websites.  He also argues that the term is overbroad because "[m]any, if not most, websites have some social media or social networking aspect" and application of the condition would "limit 'use' of or 'access' to almost all of the [i]nternet—including websites that are core to First Amendment protections like reading the news and accessing important cultural content or even checking out a book from the library."  The People respond that the term "social media" is not vague because it has a "well-established definition [that] provides 'reasonable specificity.' "  They also argue that the condition is not overbroad because it is both reasonably related to defendant's crime of conviction and to deterring future criminality.  We agree with the People.

## A.  Legal Framework and Standard of Review

"Because parolees retain constitutional protection against arbitrary and oppressive official action, 'parole conditions, like conditions of probation, must be reasonable ….' " (*People v. Austin* (2019) 35 Cal.App.5th 778, 787.)  "[P]arole conditions may not be unconstitutionally vague or overbroad."  (*Ibid*.)  "To withstand a vagueness challenge, a condition must be sufficiently precise for parolees to know what is required of them and whether the condition has been violated."  (*Ibid*.; accord, *In re Sheena K.* (2007) 40 Cal.4th 875, 890 (*Sheena K.*) [vagueness doctrine bars enforcement of a law " ' "which either forbids or requires the doing of an act in terms so vague that [people] of common intelligence must necessarily guess at its meaning and differ as to its application" ' "].)  While the level of clarity of a condition required to survive a vagueness challenge may not rise to the level of " 'mathematical certainty,' the language used must have ' "reasonable specificity." ' "  (*Sheena K.*, at p. 890.)  "A restriction is unconstitutionally overbroad ... if it (1) 'impinge[s] on constitutional rights,' and (2) is not 'tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation.'  [Citations.]  The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it

imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.* (2010) 188 Cal.App.4th 1149, 1153.)

"We review vagueness and overbreadth challenges de novo." (*People v. Navarro* (2016) 244 Cal.App.4th 1294, 1301; *Sheena K.*, *supra*, 40 Cal.4th at pp. 887–888.)

## B. Vagueness

The vagueness inquiry requires us to determine whether the condition was specific enough that a parolee would understand what was prohibited or required by the condition and a court could determine whether it had been violated. (*Sheena K.*, *supra*, 40 Cal.4th at p. 890.) When construing parole or probation conditions, we consider their context and we use common sense. (*People v. Rhinehart* (2018) 20 Cal.App.5th 1123, 1129.)

The condition of parole at issue does not specifically define the term "social media." However, the condition itself provides context for its meaning. Namely, it lists a series of prohibited sites and systems as "social media sites, social networking sites, peer-to-peer networks, or computer or cellular instant message systems" and gives examples: "Facebook, Instagram, Twitter, Snapchat, Lync, Kik Messenger, and Tumblr …." In considering the entirety of the condition, defendant's focus on the term "social media" appears reductive and fails to consider the clear overarching meaning of the condition. Based on a consideration of the entirety of the condition, it is clear that the condition prohibits a defendant from engaging with others on any internet or cellular based communication network. While defendant does not raise an as-applied challenge, the conduct leading to the violation in this case presents a good example of a social network—based on the parole agent's report, defendant used a profile containing his picture, among other things, to communicate with others on the internet. Regardless of

whether a dating website is a "social media site" or a "social networking site,"[3] a person of common intelligence would understand that use of a website that allows users to create profiles (or anonymous accounts) for the purpose of interacting with others online, generating or sharing content, or finding and connecting with users regarding common interests, runs afoul of the condition.

The parties also both rely on dictionary definitions to define the term. Consideration of relevant statutes, case law, jury instructions, and dictionary definitions are all appropriate in determining the commonsense use of a term used in a parole condition. (See *People v. Fuentes* (2023) 87 Cal.App.5th 1286, 1299 [considering statutory text, case law, and dictionary definitions in determining the meaning of " 'disturb the peace' " in the context of a domestic violence stay away order]; *In re R.P.* (2009) 176 Cal.App.4th 562, 567 [considering statutes, case law, jury instructions, and a legal dictionary in determining the commonsense meaning of " 'deadly or dangerous weapon' " in the context of a condition of probation].) The definitions provided by both parties are consistent with our commonsense understanding of the parole condition. The People provide the definition of "social media" from the 11th Edition of Black's Law Dictionary—"social media" is "Internet content creation and online social networking" (Black's Law Dict. (11th ed. 2019), Media)[4]—and Merriam-Webster Dictionary—"social media" means "forms of electronic communication (such as websites for social networking and microblogging) through which users create online communities to share information, ideas, personal messages, and other content (such as videos)[.]"

---

[3]     As noted in the next paragraph, "social media" and "social network" are often defined with reference to one another and appear to often be used interchangeably or at least with considerable overlap.

[4]     The 12th Edition of the Black's Law Dictionary provides essentially the same definition: "Collectively, all the technological means, esp. websites and apps, that enable people to participate in internet content creation and online social networking." (Black's Law Dict. (12th ed. 2024), Media).)

(Merriam-Webster's Dict. Online (2024) <https://www.merriam-webster.com/dictionary/ social%20media> [as of Nov. 6, 2024], archived at: <https://perma.cc/QGW5-R8UG>.)[5] Both parties rely on Encyclopedia Brittanica for the definition of "social media" (and "social networking"):

> "[A] form of mass media communications on the Internet (such as on websites for social networking and microblogging) through which users share information, ideas, personal messages, and other content (such as videos). Social networking and social media are overlapping concepts, but social networking is usually understood as users building communities among themselves while social media is more about using social networking sites and related platforms to build an audience."
> (Encyclopedia Britannica Online (2024)
> <https://www.britannica.com/topic/social-media> [as of Nov. 6, 2024],
> archived at: <https://perma.cc/T3ER-DCQW>.)

The definitions provided by the parties are in line with the court's commonsense and context-based understanding of the terms "social media" and "social network": any electronic platform that permits a user to create a profile (using a name or anonymously) to interact with others, generate or share content, or find and connect with others regarding common interests falls within the parole condition. Moreover, our understanding of the condition is consistent with other statutory definitions of social media and social networks. In *Packingham v. North Carolina* (2017) 582 U.S. 98, 101 (*Packingham*), the court considered a state statute that prohibited registered sex offenders who had already completed their sentences from using commercial social networking websites " 'where the sex offender knows that the site permits minor children to become members or maintain personal Web pages.' " The statute defined a " 'commercial social networking Web site' " as a website that facilitates " 'the social introduction between

**5** Likewise, Merriam-Webster.com Dictionary defines a "social network" site as "an online service or site through which people create and maintain interpersonal relationships." (Merriam-Webster's Dict. Online (2024) <https://www.merriam-webster.com/dictionary/social%20network> [as of Nov. 6, 2024], archived at: <https://perma.cc/6BBA-66P7>.)

two or more persons for the purposes of friendship, meeting other persons, or information exchanges,' " allows users " 'to create Web pages or personal profiles that contain information such as the name or nickname of the user [and] photographs,' " and provides users mechanisms to communicate, " 'such as a message board, chat room, electronic mail, or instant messenger.' " (*Ibid*.) That statute had express carveouts for "websites that '[p]rovid[e] only one of the following discrete services: photo-sharing, electronic mail, instant messenger, or chat room or message board platform' " and "websites that have as their 'primary purpose the facilitation of commercial transactions involving goods or services ....' " (*Id*. at p. 102.)

In this case, no part of the condition suggested it was limited to websites or applications known to be used by minors, offering a single discrete service like photo-sharing, or for which the primary purpose was facilitation of commercial transactions. The condition prohibits use of websites containing social media or social networking components—which may be many websites—but it is not unconstitutionally vague.

## C. Constitutional Overbreadth

Next, defendant contends that the condition of parole is unconstitutionally overbroad because the lack of "a usable definition of 'social media' " prevents him from accessing "certain parts of the Internet, such as Yelp, online shopping websites, or even the library out of concern that he may be violating his [parole]." He notes that Yelp "is a website that allows for people in the community to create an account and post comments and reviews about restaurants, shops, and other venues"; the San Francisco Chronicle, among other news websites, has a "comment section[] that allow[s] input from readers and can allow communication between individuals who choose to post"; "the Santa Clara and the San Francisco Public Libraries offer users the opportunity to write reviews of books"; and YouTube "is a website that is regularly used to consume news-related and culture-related content (movies, art, lectures, etc.). But YouTube also allows users to

create an account and post comments and potentially communicate with other users through postings." He contends that those websites would all fall within the presumptive scope of the "social media" and "social network" prohibition because they allow creation of a profile and/or communications with others over the internet. Those websites and those like them, he argues, should not be inaccessible to him because they are unrelated to his underlying crime and such restrictions impinge on his First Amendment rights.

The People respond that the condition is reasonably related to his offense of conviction and deterring future crimes because it "protects children by restricting appellant's ability to contact minors online or access children through their parents." They argue that no reasonable reading of the condition would conclude that the condition prevented use of Yelp, online shopping, or library websites. They further argue that "[i]f appellant had access to social media, he could easily communicate with minors. Or appellant could use social media to access the minors of unsuspecting adults. Adults on dating websites would not know that the man they are communicating with is a high-risk sex offender. [Citation.] Unsuspecting women would be at risk of inviting a sex-offender into their homes where their children could be preyed upon." They therefore conclude that a "broader ban on social media[—which includes a prohibition on dating websites—]is a 'practical necessity' in writing a workable parole condition to protect children who commonly use social media."

As noted above, "a restriction is unconstitutionally overbroad … if it (1) 'impinge[s] on constitutional rights,' and (2) is not 'tailored carefully and reasonably related to the compelling state interest in reformation and rehabilitation.' [Citations.] The essential question in an overbreadth challenge is the closeness of the fit between the legitimate purpose of the restriction and the burden it imposes on the defendant's constitutional rights—bearing in mind, of course, that perfection in such matters is impossible, and that practical necessity will justify some infringement." (*In re E.O.*, *supra*, 188 Cal.App.4th at p. 1153; accord, *People v. Olguin* (2008) 45 Cal.4th 375, 384.)

While the condition at issue may apply to many websites, we do not find it to be overbroad. The People contend that "using 'common sense,' a reasonable person would" know that the parole condition did not prevent access to "Yelp, online shopping, or online libraries." However, our understanding of the requirements of the condition based on the language, context, common sense, a similar statutory definition of " 'social networking' " websites,[6] and dictionary definitions—that the condition prohibits any use of an electronic platform that permits a user to create a profile (using a name or anonymously) to interact with others, generate or share content, or find and connect with others regarding common interests—does not suggest that platforms that allow user profile creation and/or communication with others would fall outside the prohibition. (See *Packingham*, *supra*, 582 U.S. at p. 102 [carving out an exception to the term "social networking" website for "websites that have as their 'primary purpose the facilitation of commercial transactions involving goods or services' "].) Such websites contain a social media or social networking component.

More to the point, in this case, the trial court concluded that the parole condition applied to defendant's creation of a profile on, and use of, a dating website made for adults. Again, we agree that the condition prohibits such conduct because the dating website allowed profile creation, messaging with others, and posting of pictures and is therefore social media or a social networking website.

Defendant contends, and the People do not dispute, that the condition impinges upon defendant's First Amendment rights because it broadly limits his access to the internet, and specifically, social media and social networking websites. We agree. (*Packingham*, *supra*, 582 U.S. at p. 108 ["to foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights"].) However, the parties disagree on whether the condition is tailored carefully and

---

**6**      (*Packingham*, *supra*, 582 U.S. at p. 101.)

reasonably related to the compelling state interest in reformation and rehabilitation. First, insofar as defendant contends the condition is facially unconstitutionally overbroad,— i.e., is unconstitutional in every potential application—we disagree. The People are certainly correct that the state has a compelling interest in preventing sexual exploitation of children. That compelling interest can justify a complete prohibition of use of social media in certain situations and the condition is therefore not facially overbroad. (*People v. Prowell* (2020) 48 Cal.App.5th 1094, 1100–1101 ["[a] complete prohibition on a probationer's access to social networking Web sites during the term of probation might in some circumstances be a close fit between the legitimate purpose of the restriction—i.e., reformation and rehabilitation of the probationer—and the burden that such a condition would impose on that probationer for the duration of the probationary term"].) Moreover, this case does not present a wholesale ban on any social media use; the condition permits at least some use of social media and social networking websites with the express permission of the parole agent. For that additional reason, it is not facially overbroad. (*In re L.O.* (2018) 27 Cal.App.5th 706, 713–714.)

Second, as to defendant's as-applied challenge, we have little information regarding the underlying offense. The record indicates only that defendant sexually abused an eight-year-old child to whom he obtained access by nature of his relationship with the child's mother. The record provides no information regarding *how* defendant obtained access to the victim's mother—whether through the internet or otherwise. This evidentiary gap arises because defendant failed to present specific details regarding his offense, to wit, the preliminary hearing transcript. (*In re E.J.* (2010) 47 Cal.4th 1258, 1281.) We further have no affirmative demonstration that defendant would not use such technology for predatory purposes, for instance, to obtain access to children through their parents. Because of the evidentiary gap, we cannot determine whether the condition was " 'tailored carefully and reasonably related to the compelling state interest in reformation

and rehabilitation.' " (*In re E.O.*, *supra*, 188 Cal.App.4th at p. 1153.)  For those reasons, defendant's as-applied overbreadth challenge fails.

## DISPOSITION

The judgment is affirmed.