Filed 11/26/25  P. v. Farca CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROSS ANTHONY FARCA,<br><br>    Defendant and Appellant. | A171291<br><br>(Contra Costa County Super. Ct. No. 01-24-02107) |

Ross Anthony Farca appeals from a sentence of 100 days in county jail after the trial court found that he violated two conditions of his parole from prison on an earlier case, one condition prohibiting him from possessing gang-related materials and one prohibiting him from possessing a knife with a blade longer than two inches.  Farca argues that the gang materials prohibition is invalid because in an earlier appeal we reversed his conviction for the offense to which the condition related.  (See *People v. Farca* (Dec. 30, 2024, A165339) [nonpub. opn.].)  He further contends that substantial evidence does not support the finding that he violated the knife prohibition.  We find no error and affirm.

1

## BACKGROUND

Around June 2019, Farca sent a message to three other users of an online gaming website and social platform. The message said, "I currently own an AR15 semi auto rifle but I can buy/make the auto sear and get the M16 parts kit. What do you think of me doing what John Earnest tried to do, but with a Nazi uniform, an unregistered and illegally converted 'machine gun' and actually livestreaming it with Nazi music? I would get a body count of like 30 kikes and then like 5 police officers because I would also decide to fight to the death 1) you don't surrender to the ZOG 2) ever watch US prison documentaries? Also I would not spam full auto, I would just use it for clusterf,ucks [sic] of kikes. Generally you want to be on semi auto only so you don't waste ammo plus depending on the target richness and need for suppression eventually I may go low on ammo so I would need to resupply from the dead officers since it's 5.56." (*People v. Farca*, *supra*, A165339.) Farca also posted, "I just would need a better target than f,ucking [sic] some random synagogue with kikes that aren't really a threat. Preferibly [*sic*] with some high value targets, even though they would have their own security." (*Ibid.*) John Earnest shot and killed one person at a synagogue in Poway in early 2019. (*Ibid.*) In Farca's bedroom, police found an AR-15-style semiautomatic rifle that qualified as an assault weapon under Penal Code section 30515.[1] (*People v. Farca, supra*, A165339.)

---

[1] Undesignated statutory citations are to the Penal Code.

A Concord police officer, Gregory Mahan, testified at Farca's preliminary hearing on charges stemming from these facts. (*People v. Farca*, *supra*, A165339.) In between dates of the hearing, Mahan participated in a federal probation search of Farca's home. (*Ibid.*) Farca sat outside on the sidewalk during the search. (*Ibid.*) When Mahan was walking away from Farca's home, Farca yelled at him, "Private Mahan, why are you here? This is a federal search. Sieg Heil. Sieg Heil." (*Ibid.*) Farca also yelled, "Mahan, the next time I see you, you will be arresting me for PC187 on you." (*Ibid.*)

A jury convicted Ross Anthony Farca of (1) manufacturing an assault weapon (§ 30600, subd. (a)); (2) possessing an assault weapon (§ 30605, subd. (a)); (3) interfering with another person's exercise of civil rights by threat of force (§ 422.6, subd. (a)); (4) making a criminal threat (§ 422, subd. (a)); and (5) threatening a public officer (§ 71). (*People v. Farca*, *supra*, A165339.) It acquitted him of another charge. (*Ibid.*) In April 2022, the trial court sentenced Farca to one year in county jail followed by four years and eight months in prison. (*Ibid.*) Farca appealed. (*Ibid.*)

Farca told a correctional counselor during his intake into the prison system that he was a white supremacist. Farca was released on a two-year term of parole in July 2023. He acknowledged receipt of his conditions of parole in February 2024. Condition 5 stated, "You shall not own, use, have access to, or have under your control: . . . (c) any knife with a blade longer than two inches," except for kitchen knives and knives used for

3

employment. Condition 40 stated, "You shall not . . . possess items (e.g., pictures, jewelry), clothing, or apparel with gang colors, signs, symbols, or paraphernalia you know or reasonably should know to be associated with gang affiliation and/or activity." When he received the conditions of parole, Farca asked his parole officer whether he could have paraphernalia relating to German signs or logos from around the year 1936. His parole officer told him he could not "have anything pertaining to that era due to his history with the Nazi stuff."

While on parole, Farca lived with his mother. During a parole search of Farca's residence in May 2024, a probation officer found a cell phone containing pictures of Adolph Hitler, swastikas, and a Ku Klux Klan member on a horse, as well as a drawing of a female with a swastika armband. The officer also found two knives with five-inch blades in the garage connected to the house by an unlocked door. The knives were in an open brown bag on top of a refrigerator.

The California Department of Corrections and Rehabilitation (CDCR) filed a petition to revoke Farca's parole for violating the gang materials and knife conditions of parole.[2] The trial court held a parole revocation hearing in June 2024. After the People's case, Farca testified. He denied ever having been a gang member. He did not recall speaking to a counselor at the beginning of his sentence. He did not remember being told that

_____

[2] The CDCR's petition also alleged two other parole condition violations. The People did not present evidence on them at the parole revocation hearing, and the trial court did not find them to be true, so we need not discuss them.

4

he could not possess Nazi symbols. He claimed he was interested in Nazi history because his Romanian ancestors fought alongside German forces in World War II. He said the knives in the garage had previously been confiscated by federal probation officers. When the federal probation officer returned the knives in January 2024, his mother took possession of them. She told Farca that she did not want him to touch the knives. Farca promised his mother that he would not touch the knives or the bag they were in. He asked his mother to put them in a lockbox that Farca did not have access to, and his mother agreed.

In June 2024, the trial court found Farca had violated the gang materials and knife conditions of parole. It observed that the knives were not simply knives with five-inch blades, but rather "blackout, colossal stilettos" used as weapons. The trial court also stated that the knives were not kitchen knives and did not just happen to be innocently within Farca's access. The trial court sentenced Farca to 100 days in county jail, awarded him 85 days of credits, and reinstated him on parole. Farca appealed.

In December 2024, this court reversed Farca's convictions on the counts of interfering with another person's exercise of civil rights by threat of force and threatening a public officer, but otherwise affirmed the judgment. (*People v. Farca, supra,* A165339.) The remittitur issued in April 2025.

DISCUSSION

## I. Knife Condition

Farca contends the trial court's finding that he violated the knife prohibition must be set aside for insufficiency of the evidence. We disagree.

As the parties agree, a parole violation must be proved by a preponderance of the evidence. (§ 1203.2, subd. (a) [court may revoke parole "if the interests of justice so require and the court, in its judgment, has reason to believe . . . that the person has violated any of the conditions of their supervision"]; *People v. Rodriguez* (1990) 51 Cal.3d 437, 442–443 [language of previous version of § 1203.2, subd. (a), when it applied only to probation revocation, permitted proof by preponderance of the evidence]; *People v. DeLeon* (2017) 3 Cal.5th 640, 647 [Legislature amended § 1203.2 to create uniform revocation process for probation, mandatory supervision, postrelease community supervision, and parole].) Pursuant to the Legislature's intent that revocation of parole follow a similar process as revocation of probation (*DeLeon*, at p. 647), we review an order revoking parole for abuse of discretion and review the court's factual findings for substantial evidence. (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318 [probation revocation].) "The substantial evidence standard 'gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' [Citation.] . . . 'Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a

judgment, for it is the exclusive province of the trial judge [in a court trial] . . . to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends.' " (*People v. Mumin* (2023) 15 Cal.5th 176, 202; *People v. Zamudio* (2008) 43 Cal.4th 327, 357 ["reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' " the judgment].)

The knife condition of Farca's parole prohibited him from owning or having access to a knife with a blade longer than two inches, with certain exceptions not relevant here. The probation officer testified that she found two knives with five-inch blades in an open brown bag in the garage of Farca's home. The garage was connected to the house by a door, and the door was unlocked. Farca himself admitted that the knives were his. This testimony on its face supports the trial court's finding that Farca had access to prohibited knives.

Farca's attack on the sufficiency of the evidence rests on his testimony that his mother assured him that he would not have access to the knives. Farca further testified that he promised his mother that he would not touch the knives. He also points out that the prosecutor never questioned him about keeping his distance from the knives. Farca's testimony on these points does not actually contradict the trial court's finding: Farca could have had access to the knives, as the trial court found, even though his mother assured him that he would not and he promised his mother he would not touch them. Moreover, even if Farca's

7

testimony would have supported a finding that he lacked access to the knives because he was unaware of them, this is insufficient to overturn the trial court's finding. The trial court evidently found Farca's testimony not credible, since it found the knives did not just happen to be innocently within Farca's access. Such credibility determinations are the exclusive province of the trial court. (*People v. Mumin*, *supra*, 15 Cal.5th at p. 202.) Farca essentially asks us to find his testimony credible and weigh it more heavily than the inference of access from the knives' presence in his home. The substantial evidence standard of review on appeal forbids this. (*Ibid.*)

## II. Gang materials condition

Before an inmate's release, CDCR meets with each inmate to provide him or her with the conditions of parole. (§ 3000, subd. (b)(7).) Parole conditions "may 'govern the location in which the parolee resides, the persons with whom he associates and lives, the places to which he may travel, his use of intoxicants, and other aspects of his life.'" (*People v. Austin* (2019) 35 Cal.App.5th 778, 786.) "At a parole revocation hearing, if a court finds a parole violation, it has the option to '[r]eturn the person to parole supervision with modifications of conditions, if appropriate' or revoke parole and order confinement up to 180 days. [Citation.] 'The court may modify or revoke parole if the interests of justice so require.'" (*Id.* at p. 787, italics omitted.)

"Because parolees retain constitutional protection against arbitrary and oppressive official action, 'parole conditions, like conditions of probation, must be reasonable. . . .' [Citations.] 'A

8

parole condition that bars lawful activity is valid only to the extent "the prohibited conduct either 1) has a relationship to the crime of which the offender was convicted, or 2) is reasonably related to deter future criminality." ' " (*People v. Austin, supra,* 35 Cal.App.5th at p. 787.)

Farca argues that the gang materials prohibition is invalid because it was based solely on his conviction for interfering with another person's civil rights by threat of force and we reversed that conviction. We are not convinced. Farca stated in his online post that he owned "an AR15 semi auto rifle" and envisioned using that weapon to murder Jewish people. (*People v. Farca, supra,* A165339.) We concluded his post was not sufficiently specific about Farca's victims to satisfy the elements of the interference with civil rights offense. (*Ibid.*) But the post still provides evidence of a connection between his white supremacist beliefs and his convictions for manufacturing and possessing the illegal weapon. Farca's white supremacist beliefs are also connected to his criminal threat conviction. When Farca made his threat to Mahan, he shouted the Nazi slogan, "Sieg Heil." (*Ibid.*) Finally, given the connection between Farca's white supremacist beliefs and his remaining convictions, the gang materials prohibition reasonably relates to deterring Farca's future criminality. The gang materials condition is not invalid.

The People suggest that even though the condition is constitutional, remand is appropriate because the trial court never had the opportunity to determine whether to maintain the condition after our reversal of Farca's interference with civil

9

rights and threatening a public officer convictions. The People are correct that the trial court never considered this issue because we reversed Farca's two convictions in December 2024 and issued the remittitur in April 2025, long after the trial court's June 2024 finding that Farca had violated the conditions of his parole. However, Farca argues that the gang materials condition does not meet any of the criteria for constitutionality and he does not agree with the People's proposal to remand. As we have rejected Farca's contention that the gang materials condition was invalid, we decline the People's suggestion to remand the matter.

## DISPOSITION

The judgment is affirmed.

BROWN, P. J.


WE CONCUR:

GOLDMAN, J.
CLAY, J.*


*People v. Farca* (A171291)

---

* Judge of the Superior Court of Alameda County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.